Gorham
v.
Gale.

GORHAM *against* GALE.(*a*)

*A notice to produce a paper at the trial in order to let in parol evidence, is not in season, unless served on the attorney previous to the circuit, when the party resides a distance from the circuit, (e. g. 20 miles,) and the paper is left at his residence.*

ASSUMPSIT for money had and received; tried at the Washington circuit, June 16th, 1826, before THROOP, C. Judge.

The action was against the defendant as late sheriff of the county of Washington, to recover money which had been received by one Stevens, his deputy, on a sale under a *fi. fa.* in favor of the plaintiff against Wm. and Jas. Getty. The suit was commenced about the 13th of February, 1823.

*The attorney of the plaintiff has power under his general warrant, to direct the sheriff as to the time and manner of enforcing the execution.*

At the trial, the plaintiff proved, that, in the afternoon of the 1st day of the circuit, June 12th, 1826, his attorney served on the defendant's attorney a notice to produce the *fi. fa.* on the trial, or that parol evidence would be given of its contents. That the defendant's attorney had not possession of the *fi. fa,* That on a former trial of this cause, it was in possession of the plaintiff's attorney. That on the 3d day of the circuit, (June 14th,) the defendant admitted the *fi. fa.* to be at his residence, about 20 miles from the place where the circuit was holden. The defendant objected that this notice was not sufficient *to warrant parol evidence; but the objection was overruled.

*The sheriff is not amenable for the [\*740] acts of his deputy, unless they are performed in the ordinary line of his official duty as prescribed by law.* Where the plaintiff gives him special directions as to the manner of execution, as by enlarging the time, giving credit to a purchaser of land, and prescribing the effect of the purchase and the time and conditions of its consummation, the sheriff is not accountable for the money received by his deputy under the special arrangements. Nor would the sureties of the deputy be liable to the sheriff for such moneys.

The plantiff then proved the *fi. fa.* by parol, which was tested the 18th of May, and returnable the 1st Monday of

Nor would the sheriff's executing a deed on a sale of land so made, operate to affirm the acts of his deputy, and adopt them as his own official acts; especially where his full knowledge of the special instructions to his deputy is not shown.

*Semb.* the act of confirmation or adoption of an agent's acts, by which the principal is to be made liable, (e. g. the adoption by the sheriff of the unofficial acts of his deputy done in his name,) is not available to sustain a suit against him commenced previous to the act of adoption being performed.

On a sale of land upon a *fi. fa.;* either the sheriff, or his deputy who makes the sale, may execute the deed. Per WOODWORTH, J., delivering the opinion of the court.

The general discretion and power of an attorney, in a suit, considered. Per WOODWORTH, J., delivering the opinion of the court.

(*a*) 6 Cowen, 467, note (*a*,) S. C.

August, 1822; and indorsed for $276 03. Walter Raleigh, the plaintiff's attorney, swore, that after the 20th of August, 1822, Stevens admitted he had received $200, and promised to pay it. The defendant objected to Stevens' declaration as incompetent; but the objection was overruled. The attorney also swore that he wrote to the defendant for the money; and received his letter dated the 18th of December, 1822. In this letter the defendant expressed his regret that he had not previously been apprised of the conduct of Stevens; and desired a postponement, until he could have an opportunity of getting Stevens and his sureties together, to make some arrangement; promising that if none was made, he would indorse his appearance on process. Mr. Raleigh further testified, that Jas. Getty was joined in the judgment with Wm., as surety. That, on the 20th of August, 1822, he (Mr. R.) wrote a letter to Stevens, in which he stated that Jas. Getty had proposed to the plaintiff to bid off the land belonging to Wm., for the amount due on the judgment, and costs; to pay 200 dollars down, and the residue in 6 months. The letter then proceeded, " If Mr. Getty pays the $200, on the sale, or on the week following, you can give him a receipt for that sum, to be executed when the residue is paid, and on payment of the balance, give him a certificate; that is to say, to be no sale completed until the residue is paid. Your terms of sale will be cash down; and of course the bargain not to be completed until the whole amount is paid. Mr. Gorham does not want to discharge the judgment, and take any new security, on the payment of 200 dollars; but to have it stand in force until the whole is satisfied; but is willing that Getty should have 6 months to pay the balance over 200 dollars."

Mr. R. further testified, that previous to his writing, the plaintiff informed him that Jas. Getty had been down; and that he (the plaintiff) had made an agreement with *him to bid off Wm. Getty's real property on the execution, for the amount of the judgment; that he was to pay $200 down, and the plaintiff was to wait on him 6 months for the residue; and if he paid the residue in 6 months, he

[*741]

was to have a deed; and directed Mr. R. to write to the sheriff to that effect. The witness did not recollect any other instructions.

It appeared that on the 24th of August, 1822, a sale took place, Jas. Getty bidding off the property pursuant to instructions to the deputy, and paying the $200. On the 24th of November, 1825, the defendant, as sheriff, executed a deed of the premises to the purchaser.

Verdict for the plaintiff, subject to the opinion of this court on a case, either party being at liberty to turn it into a bill of exceptions or special verdict.

*D. Russell*, for the plaintiff. The notice to produce the *fi. fa.* was sufficient; and after this, parol evidence was proper; (13 John. 529;) and the confessions of Stevens were properly received in evidence. (10 John. 478; 12 Mass. Rep. 163.) They were admissible even without producing the execution, and without notice to produce it. (4 Har. & M'Hen. 65.) But if they are to be laid out of view, the other evidence in the case will supply the deficiency; the evidence of the sale and payment of the $200, with the recitals of the sheriff's deed. (12 John. 163; 20 John. 49.)

The sheriff is liable for the act of his deputy, when acting within the scope of his authority; that is to say, when the act which furnishes the ground of complaint is done under color of the authority derived from the sheriff; or when the rights of parties, arising from such act, cannot be carried into complete execution without the exercise of official power. (7 John. 35; 6 Cowen, 465; 1 Mass. Rep. 530; 4 id. 60; 5 id. 271; 7 id. 464; 13 id. 295; 1 Pick. 271.) There can be no doubt, that the deputy here was acting throughout in the capacity of an officer. His acts could be enforced or carried into execution in no other way; and, at any rate, very slight circumstances *should be construed to affirm his acts. We say the defendant has explicitly affirmed them. (Pal. on Agency, 143, 145, 146, 147, 249, 250; 2 Esp. Rep. 591.)

[*742]

*S. Stevens*, contra. The notice to produce the *fi. fa.* should have been given a reasonable time before the circuit. The plaintiff's attorney knew that it was in the possession of the defendant; for the former had possession of it at the previous trial; and it must have gone from his hands into the possession of the latter. The defendant is entitled to judgment on this ground; for the plaintiff should have been non-suited. (Col. Cas. 33; 12 John. 221.)

The plaintiff's attorney followed the instructions of his client substantially; but whether he did or not, his acts under his general warrant, as attorney in the cause, are valid.

The defendant's giving a deed does not vary the case. It was no more than the deputy might have done. Such a deed would not affect the defendant; yet, in law, it would be his act. Giving a deed is not at all inconsistent with the defence. It was proper to give it, though the sheriff was exonerated; and he would be bound to give it even after a successful defence.

The deputy received the money under the private arrangement, unofficially; and the defendant is no more bound than for the act or debt of a stranger. He is not liable without a note in writing. Beside, if the sheriff's liability grew out of the act of giving a deed, the action was prematurely brought. The liability did not arise till long after the suit was commenced. Nor could he be bound at all, without a full knowledge of the facts and the law of the case. (1 Esp. Rep. 155; 1 Bay's Rep. 291; 5 John. 385.)

These points being disposed of, it leaves the case precisely as it stood when this court set aside the first verdict. That case settles, that the sheriff is not liable for the acts of his deputy when without the line of his official duty. (4 Mass. Rep. 63, S. P.) The sureties of the deputy *would not be liable. (10 John. 587.) The plaintiff made the deputy his own special agent. (2 Esp. Rep. 591.) His acts were the acts of the plaintiff. (4 T. R. 119.

[*743]

*Russell*, in reply, said the general authority of the at-

torney ceased on his issuing the execution. After that, he can act only upon special instructions. We admit that the sheriff would have been discharged, had the duty of the deputy been purely personal; but we insist that where he acts officially, and necessarily must do so to satisfy the instructions of the party, his principal is liable. The officer is, in many things, under the control of the party; but he is not the less an officer. Had the sheriff himself received and acted upon these instructions, would he have been discharged from the more solemn obligation of his official duty?

*Curia*, per WOODWORTH, J. In February term, 1826, a new trial was granted in this cause, after a verdict for the plaintiff, on facts not varying materially from the present, excepting that these additional points are here raised: 1. As to the admission of parol evidence to prove the execution; 2. That on the last trial there appeared a variance between the letter of instructions, and the directions given by the plaintiff; 3. That the sheriff executed a deed of the premises.

*First*, then, was the notice to produce the execution, given in reasonable time? If the execution had been in the sheriff's possession and under his control at the trial, the notice would have been sufficient. But there is no evidence of this; nor any presumption that, when he left home, he took with him evidence not then called for; and which it was necessary for the plaintiff to produce. The question of reasonable notice depends on the facts disclosed. I do not think, that, at the circuit, one party has a right to call on the other to produce documents, the production of which will require him to travel a distance to procure them; and when, for aught that appears, during the interval, the cause may be ordered on for trial. Besides, *it was unreasonable to impose on the defendant the trouble and expense of sending for a paper, which, had the other party exercised ordinary diligence, might have been avoided. If the execution was really a necessary part of the plaintiff's proof, he was guilty of laches in not having given the

[*744]

notice somewhat earlier. No cause is assigned for the omission; and, under the circumstances, the parol evidence should have been excluded.

*Secondly;* it seems to me, that, whether we take the instructions stated by Mr. Raleigh, or the letter written by him, there is no substantial difference. But if it were otherwise, I apprehend it was competent for the attorney to give the directions contained in his letter; and that his client was bound by them. It was a proceeding in the progress of the suit, considered beneficial to the parties in that action; and within the scope of the authority vested in the attorney. Although he cannot enter a *retraxit,* (Cro. Jac. 211; 1 Bac. Abr. 299,) or discharge a defendant from execution without payment, (2 John. 361; 10 John. 220,) he may, and ought to exercise his discretion in all the ordinary occurrences, which take place in relation to the cause. He may make stipulations, waive technical advantages, and generally assume the control of the action. It has been held, that the attorney's consent to stand to an arbitration, will bind the client. (Carth. 412; 1 Salk. 70; 1 Bac. Abr. 299.) So also, where the attorney entered a *remittit damna* as to part, and took judgment for the rest, it was held regular; and that this need not be by the plaintiff in person. (2 Ld. Raym. 1142; 1 Salk. 89.) Indeed, it is stated as a doubtful point in *Crary* v. *Turner,* (6 John. 53,) whether the attorney on record could not discharge the debt without satisfaction. The court say that, to him, "The law necessarily confides a pretty enlarged discretion and control over the suit." The instructions then were binding on the plaintiff.

*Thirdly;* I do not think the execution of the deed material. The plaintiff contends, that this is an affirmance of the acts of Stevens; and therefore the defendant is liable. In the first place, there is no proof to show that the *defendant had any knowledge of the facts and circumstances, relating to the arrangement made by the plaintiff with Stevens, or that the sale was to be conducted out of the usual course. If, therefore, independent of the fact that a deed was executed, the defendant was not liable, know-

[*745]

ledge of the previous proceedings, before he executed the deed, ought to have been shown. The act of executing a conveyance, is the ordinary act of the sheriff after a sale. It may be executed either by the sheriff or his deputy. And, so far as it is an affirmation of anything, it is that a sale has been made in the usual manner. The mere execution of the deed never can, or aught to be considered an affirmance of acts for which the sheriff was not before liable. Besides, if the defendant had known that the plaintiff had made Stevens his agent, or had given him the instructions proved, it opposed no ground of objection to the execution of the deed. Between the parties, the course taken was perfectly proper, if they preferred it. Whether the sale was in the ordinary way, or under these special instructions, a deed would become necessary to be executed by the sheriff or his deputy. The sheriff only required to be convinced that a sale had been made, the execution satisfied, and that James Getty was entitled to a deed. These facts are undoubtedly affirmed : but in what manner payment was made, whether to the plaintiff or his attorney, or to a special agent, or whether the money was paid under circumstances to render the sheriff liable or not, are questions with which the deed has no connection. It leaves them as it found them, to be decided upon the pre-existing facts. If, however, the deed established the plaintiff's right to recover, then that right did not exist before the 24th day of November, 1825, the day of its date. This action was commenced a considerable time before.

The only remaining question is, as to the legal effect of the instructions given to Stevens. That is the same presented on a former occasion. We then held that a sheriff is only amenable for the acts of his deputy in the ordinary execution of his office. To see that, in this case, he had not acted in that manner, but must be considered *as the agent of the plaintiff, it is only necessary to look at the instructions. The 200 dollars were not to be credited until the whole was paid. Here is a departure; for payment made to a sheriff, is a satisfaction *pro tanto*. Six months were allowed to pay the balance. A credit is unknown

[*746]

in the law regluating sheriff's sales. The judgment was to stand until the whole was paid : whereas, by law, in the ordinary discharge of the sheriff's duties, only the part unpaid would stand in force. On payment of the balance, a certificate was to be given. By the statute of 1820, (sess. 43, ch. 184, s. 1, p. 167,) a certificate should have been given at the time of sale, and a duplicate filed within ten days after. It will not, I think, be contended that here was not a departure from the duties of a sheriff, in the regular discharge of his official business. If there be a departure by the deputy, is the sheriff responsible? No proposition is clearer, than that the sureties of the deputy are not amenable beyond default of their principal in his official duties. The conclusion that follows is, that the sheriff ought not to be liable for the acts of his deputy, unless his redress against the deputy and his sureties is unquestionable. That the sheriff is only answerable *civiliter* for the malfeasance or nonfeasance of his deputies, in the duties enjoined on them by law, is well settled by various authorities. (4 Mass. Rep. 63 ; 2 Esp. Rep. 591; 4 T. R. 119.)

On the whole, it is the opinion of the court, that judgment be entered for the defendant:

Judgment for the defendant.