# REPORTS.

## CHITTENDEN COUNTY.

### January Term, 1841.

PRESENT, HON. CHARLES K. WILLIAMS, *Chief Justice.*
    "   JACOB COLLAMER,
    "   ISAAC F. REDFIELD,  *Assistant Justices.*
    "   MILO L. BENNETT,

---

## TIMOTHY F. STRONG & WILLIAM L. STRONG, *v.* JEPTHA BRADLEY.

The files and minutes of a justice of the peace is not the proper evidence of a judgment recovered before him, if the justice is alive. The only appropriate evidence is the record, or a copy of the record.

Where the plaintiff's attorney writes a letter to a deputy sheriff, enclosing an execution to collect, giving him a discretionary power either to serve or get security for the execution, and, in consequence, the deputy omits to serve the execution, the sheriff is not accountable for such omission.

TRESPASS on the case, against the defendant, as sheriff of Franklin county, for not returning an execution in favor of the plaintiffs and against Joel Wilson, dated November 27, 1837, made returnable in sixty days from its date. Plea, not guilty. Issue to the country.

The writ in the suit, wherein judgment was rendered against Wilson, was against Corydon Pease and Wilson. But a *non est* return was made as to Pease.

The plaintiffs, to sustain the issue on their part, offered in evidence a paper purporting to be the original writ, in favor of the plaintiffs *v.* Corydon Pease and Joel Wilson, accompanied with evidence to prove that said paper was the original files of William A. Griswold, justice of the peace, who was still living in said county, with the minutes and entries of the judgment and the issuing of the execution, signed by said Griswold as such justice, which evidence was objected to by the defendant, but admitted by the court. The plaintiffs also read, without objection, the deposition of L. B. Hunt, and the execution in favor of plaintiffs against said Wilson, which deposition tended to prove that the deponent heard a conversation between the plaintiffs' attorney and the defendant, at St. Albans, during the session of the supreme court, at the latter place, in January, 1838, in which conversation the plaintiffs' attorney told the defendant that he might take a good note payable in six or twelve months for the amount of the execution.

The defendant then introduced one Fayette Soule, a deputy sheriff under the defendant, who served the writ against Wilson, who was by the defendant duly released, and testified.

The said Soule's evidence tended to prove, that, from the first of December, 1837, to the first of December, 1838, he was a deputy under the defendant, who was sheriff of the county of Franklin; that the witness was hired by the defendant to do business for him, as such deputy, by the month, and that all letters or papers addressed to the defendant, or Soule, in relation to official business, were kept together in the defendant's office ; that, on or about the 12th December, 1837, he, Soule, received said execution by mail, in a letter directed to him, written by the plaintiff's attorney in that suit, of which letter the following is a copy :

"Burlington, 11 Dec. 1837.

"Sir—I enclose you the execution, T. F. & W. L. Strong "*v.* Joel Wilson. Should you think it necessary to take any "other course than the straight forward one, you will please "advise me."

That, in the latter part of Dec. 1837, or the first part of January, 1838, and before the session of the supreme court at St. Albans in January, 1838, the said Soule went with said

execution to Fairfax, where the said Wilson resided, and there saw the said Wilson, and, on inquiry, was told that Wilson had no property whereon to levy said execution, and he could find none, and neglected to arrest said Wilson, though he might have done so. And that during the session of the supreme court at St. Albans, in January, 1838, he, Soule, saw said Pease, and the plaintiffs' attorney and this defendant in conversation together; that afterwards, and during the life of said execution, he went, by the direction of the defendant, to Fairfax a second time to levy and collect said execution, or take a good note for the amount thereof payable to plaintiffs in one or two years, but could not then find either the body or the property of said Wilson; and afterwards, on the 24th day of January, 1838, returned said execution to the justice who issued it, without any return thereon endorsed.

The court charged the jury, in substance, that when a sheriff receives an execution to collect, he thereby, in the absence of any special instructions varying his liabilities, imposes upon himself the duty of using reasonable diligence to levy and collect the same of the debtor; and that if he cannot find the property or body of the debtor whereon to levy the execution, it is his duty to return it, within its life, into the office from which it issued, with his return of *non est inventus* indorsed thereon, so as to charge bail that may have been taken on the writ, and that if he neglects so to do, he is liable to the creditor; that the effect of the letter of instructions from the attorney of the plaintiffs would not alter or change these duties and liabilities, unless it was shown that the defendant's deputy acted under them by communicating with the said attorney for further instructions in regard to the said execution, and that the court discovered no evidence to prove that any such communications were ever made.

The jury were also told that the legal effect of the testimony of Luther B. Hunt would not authorize the defendant's deputy to forbear or neglect to make service and return of the execution, with his return of *non est inventus* thereon endorsed, within its life, into the proper office, except upon the the condition that the notes had been obtained in settlement thereof, in pursuance of the instructions given by the plaintiffs' attorney, as testified to by the said Hunt.

The jury were further told that the court, in this, case did not discover any evidence that would vary the defendant's liabilities from those which would ordinarily be imposed upon him, by operation of law, upon the reception of an execution to collect; but if there was any, they might give it its proper effect; and that the defendant was liable for the official neglect of his said deputy. The jury returned a verdict for the plaintiffs. The defendant excepted to the aforesaid decisions and charge of the court.

*Smalley & Adams*, for defendant.

1. There was no legal evidence of the judgment in favor of plaintiffs against Wilson, set forth in their declaration.

2. The execution was not delivered to the defendant's deputy " to levy, collect and return according to law," but with special instructions which varied his official duties. The plaintiffs, therefore, failed *in limine* in establishing a foundation to their claim on the defendant; for the sheriff is only answerable for the nonfeasance or malfeasance of his deputy, in the discharge of the duties enjoined on him by law. If the the plaintiff sees fit to entrust the deputy, as in this case, with discretionary authority, or with instructions enlarging or relaxing the obligations which the law imposes on him as an officer, he makes the deputy, *pro hac vice*, his agent instead of the sheriff's, and cannot call on the latter to made good the losses which may arise from the misconduct of his own agent. *Gorham* v. *Gale*, 7 Cowen, 739. *Marshall* v. *Hosmer*, 4 Mass. R. 60. *De Maranda* v. *Dunkin*, 4 T. R. 119.

By law, the sheriff, if liable in this form of action, is so, not on the ground of any special promise or undertaking which has been disregarded by him or his deputy, but for the breach of some official duty, enjoined by law on him or his deputy. But, under the charge of the court, the defendant is made liable for almost any thing, but the breach of his official duties. He is liable because his deputy omitted to communicate with the plaintiffs' attorney for further instructions in regard to the execution, though he acted in perfect accordance with his instructions, saving this omission. He is liable because his deputy did not make a *non est inventus* return of the execution, nor procure such notes as the plaintiffs required in satisfaction of their debt, though he had seen the debtor with the

execution in his hands and omitted to arrest him by reason
of the plaintiffs' intructions, before he went in search of him
the second time, by their direction, to obtain the desired secu-
rity. 1 D. Chipman R. 162. *Tomlinson* v. *Wheeler,* 1 Aik.
R. 197.

*Maeck & Smalley,* for plaintiffs,

1. The objection raised to the admissibility of the original
files in evidence is of no validity.   The original record is al-
ways evidence, and, in the English courts, is sometimes the
only evidence. 1 Phil. Ev. 289, *et seq.* 1 Stark. Ev. vol. 1.
p. 151.   *Ladd* v. *Blunt,* 4 Mass. 402.

2. It is clear the defendant is responsible, unless he can
protect himself under the letter of the plaintiffs' attorney.

It does not authorize him not to execute the execution
under any circumstances, and, if it had been the intention of
the attorney to leave any thing to the judgment or discretion of
the sheriff, the instructions would have gone further and di-
rected him, under a certain state of circumstances, not to have
executed the execution.   But nothing of that kind appears
on the face of the letter.   As the sheriff served the writ, and
moreover is presumed to have a general knowledge of the
ability of persons to pay the executions where he had ser-
ved writs; the letter supposes this knowledge in the de-
fendant, and that he would communicate his knowledge to
the plaintiffs.

3. The conduct of the defendant clearly shows that he
was not influenced by the letter.   He did not communicate
with the plaintiffs' attorney, nor with the plaintiffs, and the
evidence shows that he resorted to it for protection, only, after
he had become liable on the execution.   Besides, the matter
was left to the jury to say whether the defendant was influ-
enced by the letter or not in neglecting to execute the exe-
cution. The sheriff cannot now lay aside his official character
and responsibility and claim only the character and responsi-
bility of a special agent, after having made himself liable from
his own neglect, or that of his deputy.

The opinion of the court was delivered by
WILLIAMS, Ch. J.—Two questions are made in this case.
1. Whether the evidence offered to prove the judgment

against Wilson, was correctly received, and we are of opinion that it was not the appropriate evidence. Justices are required to keep records. In this case, the justice, Griswold, is still living, and there was no necessity of receiving any other evidence than either the record of the judgment, or a certified copy · thereof. The original record might be legitimate evidence, but it never should be used for that purpose on the trial of any issue which does not put the existence of the record directly in issue. Such records cannot go to the jury, and magistrates should not permit them to be taken from their custody, but give certified copies. In this case the papers produced were not the original record, but only the files and minutes from which a record was to be made. The court were wrong, therefore, in admitting them as evidence of the judgment.

The second question is, whether the court charged the jury correctly as to the effect of the letter written by the attorney of the creditors to the deputy of the defendant ? The court charged the jury, after stating the general duty of a sheriff in regard to executions, " that the effect of the letter of instructions from the attorney of the plaintiffs would not alter or change these duties and liabilities, unless it was shown that the defendant's deputy acted under them, by communicating with the said attorney for further instructions in regard to the said execution, and that the court discovered no evidence to prove that any such communications were made." The letter was calculated to induce the defendant's deputy to believe that some discretionary power was committed to him, and the jury might have inferred, from the testimony, that he deviated from " the strait forward course," and forbore to arrest Wilson when he first saw him, in consequence of the letter, and, if so, he should be excused for not arresting him at that time. Furthermore, there was evidence that, after this, the attorney for the plaintiffs and the sheriff had a consultation together, and the sheriff was directed to take a note payable in a year. This was evidence of some communication between the attorney for the plaintiffs and the defendant, and also evidence that the defendant was at liberty to deviate from the usual course. After this it appears that the sheriff's deputy again went to see the debtor and could not find him, and returned the execution without

service, and, inasmuch as he had seen the debtor when he first went after him, he could not make a regular *non est* return. The jury should have been instructed that if the deputy neglected to make the arrest in consequence of the letter of instruction which he received, the plaintiffs could not maintain this action. When a jail bond is taken, it has been held that if the creditor holds out any inducement to a debtor to depart the liberties, he cannot maintain an action on the jail bond, and the same principle should apply to exonerate a sheriff, when any inducement is held out to his deputy to depart from the strict line of duty. The judgment of the county court is therefore reversed.