Clark *v.* Richards.

M. H. CLARK and CHARLES DAVIS, administrators, &c., of JAMES B. CLARK, deceased, *v.* DANIEL RICHARDS.

In an action upon a judgment, brought by the representatives of a deceased judgment creditor; proof of payment to the attorney of record, made after the death of the plaintiff and before administration was granted on his estate, will not maintain an issue raised by the pleadings of payment to the administrators.

Where a jury perversely disregard the explicit directions of the court, given to them in the charge; the verdict will be set aside.

But if the court can see that full justice can be done, by changing the verdict, so as to conform to the directions, they will permit the party in whose favor the verdict was rendered, to consent to such amendment, and thereby save the expense of a new trial. *Per* WOODRUFF, J.

An attorney for the plaintiff in a judgment, when called by the defendant on the trial of an issue on *scire facias* to revive the judgment in favor of the plaintiff's representatives, may be permitted to testify to an alleged admission of payment, made to him by his client after judgment recovered, and before execution was issued, while the authority of the attorney to issue execution and to satisfy the judgment continued, and though the communication was made as a guide to him in issuing or withholding the execution. Such a communication is not confidential and privileged. WOODRUFF, J., *dissenting.*

To make a communication privileged, so that an attorney may not disclose it, it is not necessary that it should relate to a suit actually pending, if it be made to him in his professional capacity, and while acting in that capacity for the client in the matter to which the communication relates. *Per* WOODRUFF, J.

The relation of attorney and client does not for all purposes cease with the entry of judgment. *Per* WOODRUFF, J.

This cause was tried before INGRAHAM, FIRST J., and a jury. The defendant having obtained a verdict, the plaintiff moved at general term, for a new trial, on a case, in accordance with the practice in actions prosecuted under the system displaced by the Code.

The pleadings, material incidents of the trial, and facts relating to the points discussed, are stated in the opinion of WOODRUFF, J.

*Elisha W. Chester*, for the plaintiffs.

*Henry A. Cram*, for the defendant.

WOODRUFF, J.—This is a motion for a new trial on a case made before the enactment of the Code of Procedure. The proceeding was by *scire facias* to revive a judgment recovered by the intestate in his lifetime, to the end that the plaintiffs, his representatives, might have execution thereof. And the plaintiffs aver, the recovery of the judgment by the intestate for $188 59, damages and costs; the death of the intestate on the 10th December, 1844; the grant of letters of administration to the plaintiffs on the 25th August, 1847; that execution of the judgment remains to be done, etc.

The defendant appeared and pleaded payment of the judgment as follows : One hundred and seventy dollars (parcel thereof) to the intestate in his lifetime, to wit, December 30th, 1837 ; and thirty $\frac{88}{100}$ dollars (residue thereof, including interest) to the plaintiffs, administrators, etc., since the death of the intestate, to wit, on the 15th July, 1847.

Upon which plea issue was joined.

It appeared in evidence, that the judgment in question was recovered on the 29th December, 1837.

The defendant on the trial offered to prove by the attorney for the intestate by whom the judgment was recovered, that after the recovery of the judgment the plaintiff therein (his client) admitted to him that $170 had been received by the plaintiff thereon, and he was permitted to examine such attorney, who being sworn, testified that after the judgment

was entered up, and not long after, but before execution was issued thereon, the plaintiff in the judgment (the intestate) his client, called at his office and stated that he "had received $170 on the judgment." That "the statement was an isolated one, unaccompanied by explanation or direction." And the witness further states that he does not now know the object of the remark; but from the circumstance that it was made before execution had issued, and his own usual practice to issue execution soon after judgment, the witness infers as mere opinion that the communication was made soon after the recovery of the judgment, and "in order to prevent the witness from issuing execution for the amount."

This evidence was objected to by the counsel for the plaintiff, on the ground that it was a disclosure by the attorney of a confidential communication made to him by his client, while the relation of attorney and client was subsisting, and in regard to the subject matter of such professional employment, and exceptions were duly entered to the rulings by which the evidence was admitted.

This evidence constituted the only proof of any payment to the intestate in his lifetime.

In support of the amount of payment of the residue ($30 88) to the plaintiffs (adminstrators, &c.,) since the death of the intestate, the defendant proved by the same attorney, that on the 15th July, 1847 (nearly three years after the decease of the plaintiff in the judgment, and about six weeks before letters of administration were granted to the plaintiffs) the defendant paid to him (the witness) $30 88 which was the balance due on the judgment over the $170, including the costs, which costs had never before been paid to the witness; the amount being computed as follows: Balance of the principal of the damages included in the judgment $4 81; costs, $13 78; interest $11 19.

The defendant was further suffered, against the objection of the plaintiffs' counsel, to prove by the witness that the balance of the damages, $4 or $5, was a reasonable counsel fee for the witness in the original case, and to this ruling the plaintiff's counsel excepted.

Clark *v.* Richards.

It appeared, further, that the judgment in question was recovered upon a promissory note made by the defendant and endorsed by one Seth Couch to the intestate; whereupon the defendant produced, proved and offered in evidence a note dated Dec. 14th, 1836, made by Seth Couch, for $400, payable to the defendant one year after date.

For what precise purpose this note was offered in evidence, or how it tended to prove that the defendant or any one on his behalf had paid the judgment I am not able to perceive. The note was received and read in evidence, and to the ruling an exception was taken by the plaintiffs' counsel.

The jury were distinctly charged that if they believed that the sum of $170 had been paid on account of the judgment, the defendant was entitled to a credit for that amount: but that the proof of the payment of the $30 88 to the attorney for the plaintiffs in the judgment, after the death of the intestate and before letters of administration were granted, did not maintain the issue made by the pleadings, and therefore if the jury believed that the $170 were paid, the plaintiffs were entitled to a verdict for the balance of the judgment.

Notwithstanding this explicit instruction, and in total disregard thereof, the jury rendered a verdict for the defendant.

The verdict should not be suffered to stand. Apart from considerations showing the impropriety of such perverseness in the jury and their assumption to determine the case without regard to the rules of law, or to determine the rules of law for themselves in contempt of the instructions of the court, the verdict is against law; the defendant was not entitled to be allowed the payment of the $30 88; the payment to the witness did not support the plea; it was no payment to the plaintiffs nor for their use. The reasons given by the court for its direction in the charge are, I think, correct (*a*).

---

(*a*.) NOTE BY REPORTER.—The part of the charge here referred to, was as follows:—"Evidence of the payment to Mr. Wheeler (the attorney who obtained the judgment) of $30 88, made after the death of Clark, and before any administration was granted on his estate, did not maintain the issue made by the pleadings of

Clark v. Richards.

If this was the only reason for granting a new trial, that expense might be avoided by giving the defendant an election to suffer the verdict to be amended and a judgment taken against him for the sum thus erroneously allowed to him as a payment, and upon his filing such a consent denying the motion; but I apprehend the motion for a new trial must be granted upon other grounds.

The evidence relating to the counsel fee, justly due to the witness, appears to have been offered as a justification of his receipt of the balance due on the judgment and in support of the payment of the $30 88. By the same rule that excluded the payment itself and which was given to the jury for their government, the evidence was inadmissible; but as this evidence related solely to the last mentioned sum, it was in substance excluded when the jury were instructed to disregard all the evidence of that payment, so that no discussion of its admissibility is now necessary.

But, as above suggested, I am unable to perceive the relevancy of the evidence contained in the promissory note of S. Couch. It appeared by that note that S. Conch, on the 17th day of December, 1837, owed the defendant $400, on his note, payable to the defendant, dated Dec. 14th, 1836, at one year. In what manner that fact tended to support a plea that the defendant or any person on his behalf paid the intestate $170 on a judgment recovered against the defendant on the 29th Dec., 1837, on a note made by the defendant and endorsed by Couch, is not, to my mind, very apparent.

Nothing but the merest conjecture can, I think, be suggested to connect the part proved with the allegation of payment, and I cannot resist the apprehension that some other evidence was given on the trial which might serve to show some such connec-

payment to the plaintiffs, as administrators. Mr. Wheeler's powers as attorney ceased on the death of Clark, and he had no lien on the judgment, which would authorize him to collect the money for himself, and consequently if the jury believe the $170 was paid, the plaintiffs will be entitled to a verdict for the balance of the judgment."

tion, or that the testimony was received in connection with some statement of counsel or offer to prove afterwards some further circumstance which, if proved, might have made the evidence pertinent; but not being given, no further notice was taken of this evidence, and it therefore appears in the case under an objection and exception which appear to me to be well taken. Into what sort of speculations this evidence may have led the jury we cannot say, though probably they were mainly governed by the testimony of the former attorney in their finding in regard to the alleged payment of $170 to the intestate in his lifetime. No evidence was given that Couch made the payment of the $170, nor did this note show that it was his duty, as between him and the defendant, to do so. If it was likely to awaken a suspicion when connected with the circumstance, proved by the plaintiff, that the defendant had declared that he was ignorant of any such judgment, it was insufficient to amount to evidence that Couch made the payment, but no such suspicion was warranted.

A more serious, and to my mind, more important question arises upon the objection to the testimony of the attorney of the intestate to an admission by his client that he had received $170 upon the judgment.

The general rule that the attorney of a party cannot be compelled to disclose communications made to him in that capacity, and that this is a rule of public policy for the interests of justice and for the protection of the client, and therefore that the attorney cannot be permitted to make the disclosure without the consent of the client, is not denied or questioned by the defendant's counsel.

But it is sought to take this case out of the scope of that general rule upon two grounds:

First. That "the communication was made after the suit was at an end," and when the relation of attorney and client had ceased.

Second. That the communication "was made, not in reference to professional employment, but to prevent professional action."

It would be a misapprehension of the rule to suppose that the termination of the suit to which the communication relates, by judgment, renders the communication less privileged if the communication was made to the attorney in his professional capacity.

Such a communication is confidential and privileged when made to one's professional adviser as the basis of seeking advice or aid, or for his government in the protection of the client's rights, although no suit is pending, and even if no judicial proceedings are then in contemplation. Protection to clients in the conduct of their business and in securing their rights and avoiding liabilties, renders perfect freedom in their intercourse with their counsel, while acting as such, essential, and this although the subject of consultation may only by possibility become the subject of judicial investigation. (*Cromack* v. *Heathcote*, 2 Brod. and Bing. p. 4 (note *contra*); Story's Eq. Pl. § 604; *Moore* v. *Terrell*, 4 Barn. and Ad. 870; *Bolton* v. *Corp. of Liverpool*, 1 Mylne and K. 88, and other cases cited in notes to Greenlf. Ev. §§ 236, 244, 6. *Robson* v. *Kemp*, 5 Esp. 52, goes much further; and see also to the like effect 1 Hill, 36; 3 Barb. Ch. 533, 595). It is therefore not necessary that a suit should be pending.

Was the communication made to the witness in his professional character?

It seems to me that it was very plainly so. The relation of attorney and client in the matter to which the communication related had not ceased. The general power of the attorney over the suit ceases with the judgment in most cases, though even this is subject to qualification, as where judgment is entered by default and the like instances in which the judgment is itself under the attorney's control, so that he may voluntarily open it, and after judgment he is still attorney to receive notices from the adverse party of any application to the court affecting the judgment or proceedings had under it, and he is still the attorney to issue execution; to direct the sheriff as to the time and manner of enforcing it; and to receive payment

and acknowledge satisfaction. (*Gorham* v. *Gale*, 7 Cow. 739; *Kellogg* v. *Gilbert*, 10 Johns. R. 221.) In all this he acts professionally in the strictest sense, and his client is bound by his acts. (*Gorham* v. *Gale, supra.*) For these purposes then, the relation of attorney and client continues, and any and all communications made to him by his client either for the purposes of consultation regarding his rights under the judgment or the manner or extent to which it shall be enforced, or to govern the attorney in his further conduct therein, appear to me as truly confidential as if made before the action is tried.

It is conceded by the defendant's counsel that the alleged communication was made "to prevent professional action," viz. to prevent the collection of the same amount by execution, and it is difficult to imagine any other reason for making such a statement. I have yet to learn that there is any distinction between those communications made to prevent an attorney commencing a suit or taking any other step appertaining to the conduct of an action, and a communication made for the purpose of inducing the attorney to bring the suit or take such step, if the communication was made as a guide for professional conduct respecting the client's rights or interests in the subject-matter to which it relates.

Suppose an execution had in fact been issued and a motion made by the defendant to stay execution, on an allegation of payment, and an issue had been awarded to try the question, could it be doubted that the inquiry of the attorney, "what communication did your client make to you on the subject of payments received before the execution was issued?" would have been inadmissible.

I apprehend that the case falls within the rule which protects the entire professional intercourse between attorney and client, and seals it with the injunction of perpetual secrecy.

In my opinion a new trial should be ordered, costs to abide the event of the suit.

INGRAHAM, FIRST J.—I concur in the propriety of ordering a

Clark v. Richards.

new trial, because the jury found against the charge to them that the plaintiff was entitled to recover the balance paid after the death of the plaintiff in the judgment.

But I am not prepared to decide that the communication made to his attorney, after judgment, by the judgment creditor that the debtor since the judgment had paid him part of the recovery is privileged. It does not appear to be a communication made for any purpose of consultation or advice, and the attorney who had no objection to making the communication, stated that it was a mere isolated remark unaccompanied by explanation or direction.

It was evidently a communication not made for the purpose of advice, but for the protection and benefit of the defendant. (See cases cited in Cow. and Hill's notes, p. 282, 1571.) I concede if it was made for the purpose of consultation or advice, whether the suit was pending or not, it could be privileged. When made without any such intent, but merely to communicate to the attorney a fact for the defendant's benefit, it may be brought within the rule which excludes from the benefit of the privilege distinct admissions not made for the purpose of consultation or advice, or for the management of legal proceedings.

The rule, it must be conceded, is not well settled, but where, as in this case, if the payment was really made its exclusion could work gross injustice, and the death of the party prevents him calling as a witness, I should incline to its admission.

DALY, J.—I concur with the first judge.

New trial ordered; costs to abide event.