Milligan, J.,
delivered the opinion of the Court.
This is a bill filed in the Chancery Court of Haywood County, to impeach and annul a decree obtained by fraud and imposition. The bill was demurred to, and the Chancellor overruled the demurrer, and the cause is brought to this Court, by appeal.
The decree complained of, appears to have been entered by consent of the parties; and the ground of fraud and imposition alleged in the bill, is, that the complainants, at the time of entering the decree, had no council in Court, authorized to give their consent thereto.
The bill exhibits the decree, and sets out the proceedings in Court, which lead to it with great particularity, in which it appears one Daniel Cherry died in 1848, leaving his last Will and testament, in which he named Norman L. and Calvin W. Cherry — his sons as his executors, who afterwards qualified and entered upon the 'execution of the trust imposed by the Will. The estate was large, and consisted of real and personal property. The complainants in this bill, are the grand children of the testator, (their mother having died before the testator,) and claim under the 22d and’2Sd clauses of the Will, an equal share with the testator’s children.
Some time after the lapse of two years from the qualification of the executors, the complainants, together *373 with their other brothers and sisters who were all at that time minors, though their father and next friend, E. R. Jones, filed their bill in the Chancery Court of Haywood County, against the executors and other devisees and legatees, for an account and construction of the clauses of the Will, under which they claim ah interest in the estate. The defendants answered and the cause was heard by the Chancellor in 1850, who determined that the complainants were entitled, under the 22d clause of their ancestor’s Will, to take as a class of persons ; from which the complainants' prosecuted an appeal to this Court, when the decree of the Chancellor was reversed, and the complainants, and their brothers and sisters, were held entitled under the Will, to take per capita, and not per stirpes; and the cause was remanded to be proceeded in according to the decision of this Court.
In 1867, as it appears, the complainants filed an amended and supplemental bill, alleging new matter, and bringing other parties, who had acquired an interest since the original bill was filed for revivor, etc.
An account was ordered to be taken by a special commissioner, who, it seems, took the account, which for sufficient reason was set aside, and the Master directed to re-cast the account, who reported that the sum of $144,882.49, assets, had come in the hands of the executors, which was subject to a credit of $54,164.55, an account of various insolvencies, etc.
The Master’s report was made to the August Term, 1860, and remained without exceptions, or other action taken in the cause, so far as this bill discloses the *374 facts, until the 29th of August, 1866, when the death of Norman T., and Calvin W. Cherry, the executors of the testator,. was suggested and admitted by the defendant’s solicitors, and the cause revived by consent, against Benjamin Williamson, Jr., administrator of Calvin W. Cherry, deceased, and Sarah A. Cherry, ad-ministratrix of Norman T. Cherry, former executors of the testator, Daniel Cherry, deceased.
After the revivor, the decree in question was entered, as it appears upon its face, and also from the averments in the bill, “by consent of parties,” which constitutes the fraud complained of, in this bill.
The Master’s report by this decree, was confirmed without exceptions. And the bill charges that the credits allowed the executors, were falsely and fraudulently allowed, without sufficient proof, and falsely and fraudulently admitted in the decrees, without the presence of their Attorney, or any one else authorized to admit, or consent to the same.
The executors were held liable for §>25,304, which it is alleged in the bill was superinduced by the management, fraud, connivance, of Benjamin W. Williamson, administrator of Calvin W. Cherry, deceased, when he knew the decree should, under a proper account be more than $40,000 beyond the sum for which it was rendered.
In relation to the complainant’s solicitors, it is proper to remark, that the following language is employed in the bill:
“Complainants show that one of your complainants, Norman C. Jones, had retained Edward M. Yerger *375 Esq., as solicitor for himself, and your complainant Henry A. Jones; and that the father of complainant, Edward R. Jones, as next friend of said minors, retained Thomas G., and William M. Smith Esq’rs, as solicitors for said minors. ”
They further add, that “complainants show that the interest of said minors, not being adverse, they expected Mr. Yerger, and so employed him, to act as their solicitor, with the Messrs. Smith, in the conduct of said suit, to a final decree.”
Mr. Yerger, as it, appears, was not present at the rendition of the decree, and consequently gave no consent thereto. It is alleged he had no knowledge of its existence until after it was rendered, and all power is denied in the bill to him or any one else, to assent thereto.
It further appears, from the bill, that, at the time of the rendition of the decree, and long before, the complainants were absent from the State; and as soon as they learned of its rendition, they promptly repudiated it; and now claim to have it set aside, and the parties thereto, placed back in the same position in which they stood before it was pronounced.
The power of a Court of Chancery invoked in this case, is seldom called into requisition; but there is no head of equity jurisdiction, more firmly established than the power of a Court of Chancery, to grant relief against a former decree, where the same has been obtained by fraud and imposition; for these will infect judgments at law and decrees of all Courts; but they annul the whole in the consideration of Courts of *376 Equity. But this must be done by an original bill in tbe nature of a bill of review; and there is, says Judge Story, “no instance of its being done by petition.” This hind of a bill may be filed without leave of the Court being first obtained for the purpose; for the fraud, used in obtaining the decree, being the principal point in issue, and being necessai’y to be established by proof before the propriety of the decree can be investigated: Metford’s Ch. Pld., by Maullan, 6th Amer. ed., 112, 113; Story’s Eq. Pld., sec. 426 and note 1.
Such a bill must state the decree, and the proceedings which lead to it, with the circumstances of fraud, or whatever the ground may be, on which it is impeached: Metford’s Ch. Pld., same ed. 114; Story eq. Pld., sec. 428.
It lies to impeach a decree obtained by consent, when the consent has been obtained by fraud: Metford Ch. Pld., same ed., 113, 114. Lord Hardwick says in Bradish vs. Gee, 1 Ambler’s Ch. R., 229, “When a decree is made by consent of counsel, there lies not an appeal or re-hearing, though the party did not really give his consent; but his remedy is against his counsel; but if such decree was by fraud and covin, the party may be relieved against it, not by re-hearing or appeal, but by original bill.”
To the same effect is the case of French vs. Shortwell, 5 John. Ch. Rep., 555-571. In that case Chancellor Kent, in delivering the judgment of the Court, says: -“There can be no doubt of the settled doctrine, that a decree by consent, is binding, unless *377 procured by fraud; and in such a case, the party may be relieved against it, by original bill.”
But how far a decree or judgment gained by the consent of an unauthorized attorney, would bind the party against whom it was rendered, is a question of no little difficulty and conflict of authority. It is certain, however, that the rigor of the ancient doctrine of the English Courts, on this subject, has been in this country, and also in England, somewhat softened in more moderen times.
Eormerly it was held in England, “when an attorney takes upon himself to appear, the Court looks no further, but proceeds as if the attorney had sufficient authority, and leaves the party to his action against him: 1 Salkeld, 86.
But this rule, as it seems, was so far modified after-wards, as to give relief when the attorney was “not responsible, or suspicious; for otherwise the defendant has no remedy, and any one may be undone by that means:” 1 Salkeld, 88.
The rule was still more relaxed, if not altogether overthrown, in the case of Robinson vs. Eaton, 1 Term R., 62, when Lord Mansfield held that a former judgment obtained by an unauthorized attorney, upon which the money recovered was paid into Court, and then over to the attorney, was no bar to another action brought by the plaintiff against the defendant, for the same cause of action. The ground of this decision seems to have been, that the attorney who prosecuted the first suit, in the plaintiff’s name, had no authority for doing so.
*378 Other English cases seem to recognize a distinction in cases of an unauthorized appearance, between cases when process has been served, and when it has not. If it is said the process has been served and the plaintiff be innocent of any fraud, or collusion, and the attorney is responsible, the party for whom the attorney appeared is confined to his remedy against him: Bailey vs. Buckland, 1 Exch., (1 Wells, H. & G.,) 1.
But in this country, in the case of Denton vs. Noyes, 6 John. R., 300, which was a judgment by confession, after the writ had been sued out, but before service by an unauthorized attorney, it was held, (Kent delivering the opinion,) that, “if the attorney had acted without authority, the defendant has his remedy against him; but the judgment is still regular, and the appearance entered by the attorney without warrant, is good appearance as to the Court: Citing, 1 Keble, 89; 1 Salk., 86; Comyer’s Digest, Tit., Attorney, B., 7. “This rule of law,” says the Chancellor, “though perfectly well settled, would oftentimes, be unjust in its operation, if it was not so restrained as to save the party who may be affected by it, from injury. It was, therefore, wisely laid down by the K. B., in the time of Lord Holt, 1 Salk., 88, that, “if an attorney for the defendant be not responsible, or perfectly competent to answer to his assumed cliant, they would relieve the party against the judgment, for otherwise a defendant might be undone.” “I am willing,” continues the learned Judge, “to go further, and in every such case, to let the defendant in to a defense to the suit. To carry our interference beyond *379 this point, would be forgetting that there is another party in the case, equally entitled to our protection.” See also Gaillard vs. Smart, 6 Con. R., 385.
But, in a still later case, in the Supreme Court of the United States, it was held, (without here attempting to go into the facts of that case,) that an appearance of counsel through inadvertance, and without fraud, to the- prejudice of the party, subjects the counsel to damages. .“But this,” says the Court, “would not sufficiently protect the rights of the defendant. He is not bound by the proceedings, and there is no other principle which can afford him adequate protection,” The judgment in this case, was held a nullity, and consequently insufficient to authorize the seizure and sale of property under it: Shelton vs. Tiffin, 6 Howard’s R., 163.
Without attempting to reconcile the apparent conflict in the cases cited, it is clear, that much sanctity must be attached to the records of courts, and great consideration given to the appearance of counsel in a cause. He is an officer of the Court, who, by his license, granted in this State by two Judges, is recommended to the public confidence, and it is not presumed he will betray that confidence; and if the opposite party who has concerns with an attorney, in the business of a suit, is bound always at his peril, to look beyond the attorney to his authority, it would be productive of great public inconvenience. It is not usual for an attorney to require a written warrant from his client. The mere fact of his appearance is always deemed enough for the opposite party, and for the *380 Court; and if his authority be doubted, under our practice, the attorney, on motion, may be required to show it. But, if his client’s denial of authority is to vacate all the proceedings of the cause in which he appeared, the consequences would be mischievous, indeed : Denton vs. Noyes, 6 John., 301; Gorham vs. Gale, 7 Cow., 739.
[But, while all this is clear, it is equally clear, upon principle and authority, that a judgment or decree gained by the consent of an unauthorized attorney, may be set aside. To do this, however, it is incumbent on the party assailing it, on the ground of their want of authority in the attorney, to appear, to make out a clear and unmixed case, free from fault and negligence on his part. Public policy requires this in view of the fact that it is easy for .one party, especially after the lapse of time, to deny the attorney’s authority, and difficult for the other party to show the authority, even if it existed. Hence, it is a sound rule, to require the party assailing a judgment or decree on this ground, to show clear merits, to take prompt action, and to establish his right by cogent and strong proof.
But, if the assent of an attorney, as I have shown, is gained by fraud and imposition; .a Court of Equity will interpose to set aside and vacate a judgment or decree thus obtained; for fraud vitiates every thing it touches. Now, in view of these principles, can this bill be sustained? The case stands on demurrer, and we must look to the face of the bill for the grounds upon which it must stand or fall: Story’s Equity Pleads., 639.
*381 On tbe ground that the complainants had no authorized counsel in Court, at the time the decree complained of was rendered, it is sufficient to remark, that the bill itself shows that the original bill in this case was filed by the complainants and their brothers and sisters, during their minority, by their father, as their next friend, and at that time, or subsequently thereto, the Messrs. Smith were retained by the next friend, to conduct the cause. When these gentlemen first appeared in the cause, or who, if any one, preceded them as counsel for complainants during their minority, does not appear in the bill. The Messrs. Smith are, however, fully recognized as regularly retained counsel in the case by complainant’s father and next friend of the minors. But when the complainants reached their majority, and ceased to prosecute the original suit by a next friend, does not, except inferentially, appear; neither does it appear when Mr. Yerger, their recognized attorney, was retained, or assumed to act as their solicitor in the cause. But they do say, he was retained by one of the complainants for both, and was expected to act with the Messrs. Smith in the conduct of the cause to a final decree. The bill is silent as to the counsel who conducted the cause for the complainants during their majority; and also, as to the time when such counsel was discharged or ceased to act in the cause, after the complainants became mi juris, and capable of conducting the suit without the intervention of a next friend.
The conclusion is, therefore, irresistably forced upon us under a fair and reasonable interpretation of the *382 bill, that the Messrs. Smith were, in contemplation of law, the counsel of complainants, and as such, clothed with all the ordinary powers of attorneys, to act for their clients at the time the decree complained of was entered.
The fact that Mr. Yerger was associated with them, did not, of itself, sever the relation of client and attorney, which theretofore existed between them, or operate to diminish their authority to represent the complainants on the final hearing of the original cause.
Treating this case as resting on the ground that the decree was obtained by the consent of an unauthorized attorney, the bill cannot be maintained for other reasons. It must be admitted that the injury complained of resulted from the confirmation of the Master’s report. It appears to have been made to the August Term, 1860, and no exceptions were ever filed to it. In the bill it is assumed that the war intervened and closed the courts; but as a historical fact, it is known that the Courts were not closed in this State until after at least two terms of the Court had passed, from the filing of the Master’s report in August, 1860. So? under the rule before stated, there is not, in this case, the diligence and prompt action necessary to bring the case within its provisions. The fact that the complainants did not hear of the final decree for some time after it was passed, is no allegation that they did not know of the Master’s report, or reason for not excepting to it in time. A party cannot sleep on his rights, or intrust his business to attorneys, and without the least show of diligence come in, years after *383 the time at which he could have availed himself of the advantage the law gave him, and on that ground set aside a judgment or decree of a court of competent jurisdiction.
Admitting the Messrs. Smith were the solicitors of the complainants, and as such, had the right to appear in the original cause, had they the authority to answer to the decree complained of?
On this question, we have no direct adjudication in this State, but it can scarcely be doubted, under the authorities already cited, as well as the cases of Kellogg vs. Gilbert, 10 John. R., 220; French vs. Shotwell, 5 John. R., 564; Gorham vs. Gale, 7 Cow. R., 739; 1 Bacon’s Ab., letter D, note A, 491, that an attorney under a general warrant, before judgment, may assent to a decree in Chancery which will be binding on his client, unless that assent was gained by fraud and imposition; and in such a case a Court of Equity will set it aside.
And this brings us to the consideration of the last and only remaining question in this case; and that is, was the assent of the Messrs. Smith gained to the decree complained of, by fraud and imposition? No specific acts of fraud are charged against them as solicitors. Their offense, in the light of the bill, appears to have been, in yielding their assent to the decree, without authority; which we have seen, in the view we have taken of this case, was justified by their general warrant as attorneys. The case, therefore, stands on this point, stripped of every ground of equity, unless it had been specifically charged that their assent to the *384 decree had been gained bj fraud and imposition, which we do not understand has been done.
On the whole case, we are satisfied this bill cannot be maintained; and we therefore reverse the decree of the Chancellor overruling the demurrer, and dismiss the bill.