RUFUS DYER *vs.* JOSIAH TILTON.

Somerset. Opinion October 18, 1880.

*Practice. Preparing cases for law court. Sheriff; not liable for unofficial acts of deputy.*

It is not good practice to cumber a case prepared for law court by printing *in extenso* the formal parts of documents upon which no question arises. In making up a case counsel can often save money, time and trouble, and it is a duty which they fairly owe to their clients and the court.

No officer is required to arrest a debtor on an execution unless written directions to arrest, signed by the creditor or his counsel, is indorsed on the execution.

In any proceeding to " fix up" an execution, in the hands of a deputy sheriff for collection, by taking an indorsed note from the judgment debtor under the instruction of the creditor, the deputy would be acting as agent for the creditor and not in his official capacity.

The sheriff is not liable on the contracts of his deputy though such contracts grow out of and are connected with his official duties, so long as they are not a part thereof.

ON MOTION.

The case is stated in the opinion.

*J. J. Parlin,* for the plaintiff.

*Walton & Walton* and *C. L. Jones,* for the defendant.

BARROWS, J. On motion to set aside verdict as against law and evidence. The plaintiff declares in case against the sheriff for the misconduct of his deputy, setting forth his claim in two counts, in the first of which the misdoing alleged is a willful refusal and neglect to take the bodies of the plaintiff's judgment debtors in default of other satisfaction, and a neglect to return the plaintiff's execution into the clerk's office according to its precept. The second count sets out the recovery of judgment by the plaintiff at the March term, 1875, against two debtors, the issuing of sundry executions thereupon, and, finally, of a *pluries* on the thirteenth day of July, 1877, which it is averred was placed in the hands of the defendant's deputy in August of the same year. Yet the deputy neglected to serve, execute and return it according to the command therein given, by means of

which the plaintiff has lost his debt, the debtors having since become insolvent and worthless.

We remark here that the needless expense of printing the first three executions (in the ordinary form and differing only in date) which were issued upon this judgment might have been saved, and the report of the evidence improved by substituting three lines of admission of counsel describing the documents and stating that they were put into the case.

It is not good practice to cumber a case by printing *in extenso* the formal parts of documents upon which no question arises. A little judicious attention on the part of the respective counsel to the making up of a case would often save money, time and trouble, and it is a duty which counsel fairly owe to their clients and the court.

A verdict for the plaintiff under the first count for anything more than the nominal damages, caused by the failure to return the execution into the clerk's office cannot be sustained for want of the written direction to arrest, signed by the creditor or his attorney and indorsed on the execution, without which according to c. 116, § 5, R. S., no officer is required to arrest a debtor on execution.

Under the second count, the testimony tends to show that during the time the execution was in the deputy's hands, before its expiration, one of the judgment debtors was worthless, and the property of the other heavily encumbered by mortgage and attachment; but that vigorous measures might probably have resulted in securing payment from him rather as an indirect consequence than as a direct result of any levy upon real estate that might be made. But he had also unincumbered attachable personal property (five or six horses, wagon, sleigh, &c.), which for aught that appears might have been taken to satisfy the execution.

If the case stopped here the verdict might be sustained.

For, when an execution is put into an officer's hands for collection, and he neither requests nor receives special instructions as to his mode of proceeding, he is bound to use reasonable diligence to execute his precept, and will be answerable for not

seizing and selling the debtor's goods when he might have done it, if the creditor is injured by his neglect. *Bond* v. *Ward*, 7 Mass. 123, 126.

It is true that Walker, the defendant's deputy, testifies that when the plaintiff gave him the execution he asked plaintiff how it was to be collected, and plaintiff promised to show him property but never did, and told him to keep the execution till he called for it. But the plaintiff denies this; and there is nothing in the case which would require us to set the verdict aside, because the jury chose to believe the plaintiff rather than the officer touching these matters. But the defendant, together with the general issue, pleads by way of brief statement that his deputy acted in conformity throughout with oral directions from the plaintiff; and this, if established, will be a good defence. *Rice* v. *Wilkins*, 21 Maine, 558; *Jenney* v. *Delesdernier*, 20 Maine, 182. Still further, it is not necessary that the defendant should establish all that is asserted in the brief statement, if enough is shown to constitute a good defence. *Clark* v. *Foxcroft*, 6 Maine, 296.

Now the testimony on both sides tends strongly to show that the plaintiff ever after he had recovered his judgment in 1875, and during the life of this execution as well as those that had previously been issued, was, for some reason, reluctant to levy upon, or sell the property of Steward. As Steward, who is the plaintiff's witness, testifies respecting the numerous conferences which the plaintiff and Steward had, — "I don't know as he (plaintiff) called on me for pay, but called to see about it; wanted it fixed up some way." It seems to be very clear that whatever the talk about levying or arresting might have been, it all ended in a specific direction from the plaintiff to the deputy sheriff to take Steward's note signed by one Moore in discharge of the execution, and that the damages found by the jury were for the deputy's neglect to attend to the procurement of this note. It is made a prominent topic of inquiry throughout. Little stress seems to be laid upon the other matters either by way of charge or exculpation, except as they bear upon this. The plaintiff and Walker both agree that there was a bargain that the note should

be given and received. The plaintiff says Walker made the negotiation; Walker says the plaintiff did it. It is of no importance which, provided the plaintiff directed Walker to close the business that way. The plaintiff's version is that upon being informed by Walker that Steward said that if he was arrested he could give bond and get delay, but if not arrested, "he would settle the debt by his note and Albert Moore's. I asked him why he didn't take it, and he said he didn't know as I would like the security; I told him I didn't want any better, and he said he would go down the next day and get it." The plaintiff relates another interview with the officer, commencing with an inquiry whether he had got the note, and ending with a promise on the officer's part to go down the next Monday and get it; and the plaintiff says instead of doing it the next day he went off buying stock.

But in any such proceeding for the "fixing up" of an execution, the deputy sheriff would be acting, not in his official capacity, but as the agent of the plaintiff; and he only would be answerable to the plaintiff for any neglect which he might be guilty of in the business thus undertaken. Touching the sheriff's liability the rule is that he is not responsible for the neglect of any act or duty which the law does not require the deputy officially to peform. *Harrington* v. *Fuller*, 18 Maine, 277. "The sheriff is answerable *civiliter* for the defaults of his deputies by nonfeasance or malfeasance in the duties of their office, enjoined upon them by law; but not for a breach of a contract made with a plaintiff, obliging themselves to do what by law they were not obliged to do," says PARSONS, C. J., in *Marshall* v. *Hosmer*, 4 Mass. 63.

Where the plaintiff in an execution gives to the deputy sheriff a power over it not given by the law, or gives directions for the management of it otherwise than as required by law, the sheriff is not responsible. *Samuel* v. *Commonwealth*, 6 Monroe, 174. See also, *Strong* v. *Bradley*, 13 Verm. 9; and discussion by SHAW, C. J., of what will and what will not constitute an official neglect or misfeasance on the part of a deputy sheriff, in the two cases of *Lawrence, Adm'r*, v. *Rice*, 12 Met. 531, 534, 535, 537, 540.

The sheriff is not liable on the contracts of his deputy, though such contracts grow out of and are connected with his official duties, so long as they are no part thereof. Thus, before the passage of the statute, making it the duty of an officer levying upon real estate to cause the levy to be recorded in the registry of deeds, it was held that although the deputy sheriff, making the levy, had agreed with the creditor to get it recorded, and received the fees therefor, the sheriff was not liable for his neglect to fulfil his agreement. *Tobey* v. *Leonard*, 15 Mass. 200, 202. *Waterhouse* v. *Waite*, 11 Mass. 207.

Hence too, in *Gorham* v. *Gale*, 7 Cow. 739, it was held that the sheriff is not amenable for the acts of his deputy, unless they are performed in the ordinary course of his official duty, as prescribed by law; and where the plaintiff had given the deputy special directions as to the manner of execution, respecting enlarging the time and giving credit to a purchaser and prescribing the effect of the purchase, and the time and conditions of its completion, the sheriff was not held liable for the money received by his deputy under the special arrangements; and it was said that the sureties of the deputy would not be liable to the sheriff for such moneys, and that the sheriff ought not to be held responsible for any acts of his deputy as to which he could not have redress against the deputy and his sureties on his bond. See also, S. P. 31 Maine, 165, and 37 Maine, 305.

So here; it is clear from the whole evidence that the plaintiff did not really want a levy or an arrest. He relied upon Steward's promises "to fix it up." The neglect he complained of and for which the damages were given was the neglect of the deputy to go down and get the note according to his repeated promises. But that was not a neglect for which the sheriff is properly chargeable. The plaintiff's remedy is against the deputy as his agent to accomplish an adjustment out of the ordinary course of his official duty, as prescribed by law. His neglect and failure to attend to this could not justify a verdict against the sheriff. But as the jury were not satisfied that the plaintiff gave the deputy the further direction to keep the execution till called for,

the verdict should stand for nominal damages. *Laflin* v. *Willard,* 16 Pick. 64; *Gallup* v. *Robinson,* 11 Gray, 25.

> *Motion sustained unless the plaintiff will remit all but $1.00 damages. If he so remits, motion to be overruled.*

APPLETON, C. J., WALTON, DANFORTH, PETERS and SYMONDS, JJ., concurred.