WALRADT *vs.* MAYNARD.

Money collected by an attorney, for his client, must be demanded, or a direction to
remit given and neglected, before a suit can be brought therefor.

But where the attorney denies his liability to pay, and sets up a claim against his
client, exceeding the amount collected, this amounts to a waiver of a legal
demand.

An attorney employed to defend a suit removed from a justice's court to the com-
mon pleas by certiorari, has no authority by virtue of his retainer for that purpose,
to bring a suit in the name of his client, against the obligors in the bond given
upon obtaining the certiorari.

WALRADT sued Maynard before a justice for moneys collect-
ed by him as attorney, and which he refused to pay over.    May-
nard pleaded the general issue, and gave notice of set-off for fees
as attorney and counsellor, &c.    A recovery was had before the
justice and an appeal taken by Maynard, to the Chenango com-
mon pleas, and a trial had, in which Walradt was again suc-
cessful.    The cause came before this court, on a motion by the
defendant to set aside the verdict upon a case embodying the
execptions taken on the trial.    It appeared from the evidence
that Walradt recovered a judgment in a justice's court, against
Tatlet and Murdock, which they removed to the common pleas
by certiorari, and that Waldradt retained Maynard to defend.
It was defended successfully, and judgment given in the common
pleas, for the amount of the recovery before the justice, and the
costs of defending the certiorari.    There were two executions
issued on the judgment prior to the *capias ad satisfaciendum*
upon which the under sheriff swears he collected the judgment
in February, 1844, and paid it to Maynard, amounting at that
time to $49,89.    In the summer of 1845, Maynard, without
the privity or direction of Walradt, commenced a suit in a jus-
tice's court, against Tatlet and Murdock, and Dimick their surety
on the bond given on removing the judgment above mentioned
to the common pleas, and recovered on the 11th of July, 1845,
a judgment for $49,75 damages, and $2,30 costs.    The actual

Walradt *v.* Maynard.

service before the justice was rendered by Mr. Reynolds for Maynard, as a matter of professional comity, for which Maynard charged two dollars. He claimed ten dollars as a counsel fee to Mr Cook associated with him on the argument of the certiorari, three dollars for executions issued on the judgment in that case, $1,56 for sheriff's fees on the executions returned *nulla bona*, $20 for his taxable costs. The counsel fee to Mr. Cook was disposed of by his testimony. He swore that he was retained by Walradt to argue the certiorari, and did not know that Maynard was employed, until the day of argument. As between him and Maynard, the latter agreed to keep 10 dollars out of the judgment, when collected, for him. The attorney for Walradt to prove a demand of Maynard before suit brought, testified that previous to December, 1845, he wrote a letter to him on the subject, directed to Bainbridge, his then residence, but without any special authority for that purpose; that he subsequently saw Maynard at Norwich, at witness' office, and that he there said he would settle with Walradt if he would pay him five dollars, and that he would not settle in any other way; and that Maynard at the request of witness, wrote himself to Walradt to that effect; and that after that, Walradt gave him a written power to prosecute. The sufficiency of this as a demand, and the power of Maynard as an attorney in the certiorari suit, to prosecute the suit on the bond given therein, without the direction of Walradt, and the consequent right to charge him for that service were the only important questions presented by the case.

*H. M. Hyde,* for the plaintiff in error.

*James M. D. Carr,* for the defendant in error.

*By the Court,* MOREHOUSE, J. Money collected by an attorney for his client, must be demanded, or a direction to remit given and neglected, before a suit can be brought therefor. The question is whether there was a waiver of it. *Rathbun* v. *Ingalls,* (7 *Wend.* 320,) is cited for the rule, and also for an

exception to it.   In that case, the defendant had made declara-
tions to third persons, not the agents of the plaintiff, nor in any
manner connected with him, that he intended to retain the
money to indemnify him for a fraud which had been commit-
ted upon him by the plaintiff, in the sale of a horse, and there
was no evidence even that those declarations came to the
knowledge of the plaintiff.   It was held not sufficient evidence
of a waiver of a demand.   The legitimate object of a demand
is to enable the party to discharge his liability agreeably to the
nature of it, without a suit at law.   If he denies the liability,
or the right of the other to call upon him, a demand must be
as unnecessary as it would be useless.   The rule in chancery is,
if the defendant denies the right of the plaintiff, he cannot in-
sist in his defence that there was no demand.   (*Ayer* v. *Ayer*,
16 *Pick.* 327.)   The rule is otherwise at law, unless the defen-
dant by his declarations or conduct furnishes evidence from
which to infer a waiver.   In the case before us, the defendant
wrote to the plaintiff that if he would pay him five dollars, he
would settle with him, and not in any other way.   Allowing that
the plaintiff's attorney, at the time he wrote about the demand,
and when he conversed at his office with the defendant about
it, had no legal right to demand payment, would it qualify in
any respect the communication made by the defendant to the
plaintiff on that occasion ?   He denied his liability to pay, and
set up a claim exceeding the amount collected for the plaintiff.
I think it was a waiver of legal demand.   In *Miles* v. *Boyden*,
(3 *Pick.* 213,) the father of an infant legatee called upon the
executor to pay the legacy; he refused, assigning as a reason
that there was no legacy given to the infant by the will, but
making no objection to the authority of the father to make the
demand ; and it was held by the court that the executor had
thereby waived the necessity of any other demand, although
by law the father had not a legal right to demand payment of
the legacy.   The authority of an attorney, in virtue of an orig-
inal retainer in a suit, continues until final judgment is actually
perfected ; and as a general rule and for general purposes, no
longer.   There are certain purposes for which it is prolonged—

such as the issuing of execution or other things necessary to the collection and satisfaction of the judgment; and he may by statute acknowledge satisfaction at any time within two years. Before the statute he could not acknowledge satisfaction without a new warrant for the purpose. He cannot discharge the debtor on receiving a less sum than the judgment. While the suit is progressing, his authority is large. He may make stipulations, waive technical advantages, arbitrate or refer, discontinue or remit damages, and almost discharge the debt without satisfaction. This large discretion, while he is controlling the cause, ends when judgment is perfected. The warrant of attorney is *quousque placitum terminatur*. (*Kellogg* v. *Gilbert*, 10 *John. R.* 220. *Jackson* v. *Bartlett*, 8 *Id.* 361. *Gorham* v. *Gale*, 7 *Cowen*, 744. *Lusk* v. *Hastings*, 1 *Hill*, 656. *Lewis* v. *Gamage*, 1 *Pick.* 337. *Langdon* v. *Potter*, 13 *Mass.* 319. *Parker* v. *Dunning*, *Id.* 465.) The counsel cited *Dearborn* v. *Dearborn*, (15 *Mass.* 316,) which establishes as a principle that an attorney who undertakes to collect a debt, is bound to sue out all process necessary to the object, and when he neglects seasonably to sue out a *scire facias* against bail, he is liable. There is no analogy between that case and prosecuting a suit upon the bond in question, or a bail bond in this state. An action does not lie upon a bail bond in Massachusetts. We have the English law and practice of bail to the sheriff, and bail to the action, which is a recognizance of bail taken in court. An action may be brought upon the former by the sheriff, in his own name, or by the creditor as assignee, and upon the latter by the creditor, because it is a direct obligation to him, and the privileges of bail are regulated and secured to them by the rules of court. Not so in Massachusetts. By force of their statute, the bond given to the sheriff is ordinarily the only bail to the action, and the sureties to the sheriff take upon themselves all the obligations of both bail below and bail above. So that if the principal ultimately avoids, the bail are liable for the debt. The statute gives the judgment creditor a *scire facias*, and it is his only remedy against bail, and it must be served upon the bail within one year of the final judgment.

(*Crane* v. *Keating*, 13 *Pick*. 339.) Hence the attorney has not only the power, but it is a duty for the neglect of which he is responsible, to issue a scire facias when proper against bail. It is a process in the cause, to collect the judgment, not a suit or action commenced. The duties and obligations of attorneys in this state are co-extensive in analogous cases. An attorney for an appellee who should neglect, within thirty days after an execution could be issued, to issue one upon the judgment, whereby the sureties on the appeal bond should be discharged and the judgment lost, would be liable to his client, or if he should neglect to issue process for the collection of the judgment, in an ordinary case, whereby the debt was lost, he would be liable. Can it be pretended that upon the return of an execution unsatisfied he is authorized to file a creditor's bill because it is a means of collecting the debt? Could he make his client the bailiff of the debtor, by taking the notes of third persons in payment of the judgment, prosecute them, and charge his client costs in the suits if unsuccessful or otherwise, because it was a probable, or perhaps in his judgment the only means of obtaining payment? I think not. There is a farther embarrassment in this case. From the evidence, the judgment upon the certiorari was satisfied in February, 1844. It was only said upon the argument that the suit upon the bond was not beneficial to the plaintiff. Why it was brought at all, was not explained. The justice testified that Mr. Reynolds appeared for Maynard on the return of the summons and adjourned the case; that at the adjourned day he appeared again, when judgment was rendered for the plaintiff. One of the defendants appeared on one or both occasions, but whether the suit was contested or not, does not appear. The defendant is a counsellor of this court enjoying a reputation which precludes the suspicion even that he would prosecute the surety fraudulently, or institute proceedings no way beneficial or necessary to a client, with a view to costs and charges, merely. Lord Brougham's sarcastic definition of an attorney, " a learned gentleman who gets the property of one man out of the hands of another, for him, and keeps it himself," I trust is in no degree applicable to the defendant

in this suit.    In the absence of explanation I must judge of this case as it stands before me.    The defendant in February, 1844, received for the plaintiff $49,89.    Twenty dollars of that sum belonged to him for his taxable costs as attorney in the suit. He had issued three executions, and no objection is made to allowing him for two of them as extra.    Nothing is shown authorizing the charge of sheriff fees.    If the sheriff neither levied nor made any thing on them, there is no law allowing him fees, except for making his return thereon, $12\frac{1}{2}$ cents each. They were allowed as charged.    The suit upon the bail bond was not only without the knowledge or consent, express or implied, of the plaintiff, but without authority of law and contrary to good conscience.    If the case is not truthfully made up and the suit upon the bond was before the satisfaction of the judgment, I think the charge of the court below was still right in relation to the claim of the defendant for prosecuting it; and that a new trial should be denied, and the judgment of the common pleas affirmed.

Motion denied.

