Livingston *v.* Radcliff.

SAME TERM. *Before the same Justices.*

LIVINGSTON *vs.* RADCLIFF and others.

An attorney, under his general authority to collect a note, is authorized to receive a payment of part in money and the residue in a note for a short period of a person of undoubted responsibility.

Where one of several makers of a note makes an arrangement with the other makers, or some of them, by which provision is made for the payment of such note, and the means are put into his hands for that purpose, and in consequence thereof he takes it up, paying a part of the amount in cash and giving his individual note for the balance, which the holder accepts in payment of the first note, and thereupon gives up the original note, the consideration is clear and sufficient, and the makers of the original note are thereby discharged.

Where the circumstances of the transaction show that a debtor, discharged by

the acceptance of another security, has, by reason of the arrangement, put himself into a position where he may, or must, be prejudiced if held liable for the debt, this constitutes a legal consideration for the creditor's discharging him. The decisions in *Cole* v. *Sackett*, (1 *Hill*, 516,) and *Waydell* v. *Luer*, (5 *Id.* 448,) considered, and disapproved.

THIS was an action of assumpsit, brought by the plaintiff to recover the amount of a promissory note for $1000 and interest, given by the defendant Radcliff and four others. The declaration contained the usual money counts and an account stated, with a special count against two of the makers, Platt and Delamater, who had affixed to their names the word " security," with a notice subjoined that a promissory note of which a copy was also subjoined, would be given in evidence for the plaintiff, on the trial, under the money counts and the special count. The defendant Radcliff alone appeared. He pleaded the general issue. The cause was tried before Justice Barculo at the Dutchess circuit in October, 1848. By consent of the parties it was tried by the judge without a jury. The plaintiff proved the signatures of the makers, to the note. The declaration was not served upon Platt and Delamater. The defendant introduced J. C. McCarty as a witness, who testified that he was the law partner of the plaintiff's attorney; that the note in question was left in their office for prosecution, by G. Van Kuren, the plaintiff's agent; that prosecution was delayed at the suggestion of the defendant; that Platt, one of the makers, said the note would be arranged, and that on the 13th of June, 1848, he paid to the witness $490, and drew his individual note for $600; that the witness at first objected to taking Platt's note; that Platt wanted him to take his note for 2 or 3 days, saying that if Van Kuren was not satisfied, he, Platt, would give witness the money for it; that witness then gave up to Platt the note in suit; that he met Van Kuren the same afternoon and told him what he had done, but he made no reply; that a day or two afterwards Platt came to the office and asked the witness for his note and money, and the witness returned the same to him, and took back the note in suit; that the whole arrangement with Platt was conditional; that it was one transaction,

and was subject to Van Kuren's approval. This witness also testified that Platt was responsible, and *in good* credit. The plaintiff's attorney testified that on being informed by McCarty of the taking of Platt's note, he went immediately and saw Van Kuren, and told him what had been done; that Van Kuren said he did not assent to it, that he wanted the money, and would not take any man's note; that the witness then called upon Platt and told him Van Kuren would not assent to the arrangement that he had made with McCarty, and that he must pay the money on the note; that Platt thereupon returned the note now in suit, and took his own note and the money. Van Kuren testified that Edward Pultz, one of the makers, applied to him, as the plaintiff's agent, for a loan of the money upon the note in question; that Pultz and P. E. Radcliff, another of the makers, were partners; that the witness received the note from Platt and paid him a check in favor of Pultz for $700, and the balance in money; that he, Van Kuren, did not assent to the arrangement of Platt with McCarty; that he did not want any further notes, but wanted the money. The evidence being closed, the court rendered a judgment for the defendant, with costs; and the plaintiff, upon a case, moved for a new trial.

*A. Wager*, for the plaintiff. I. There was no payment made by Platt the surety; as the arrangement he made with McCarty was conditional, wanting Van Kuren's approval, which was refused; and McCarty had no authority to accept a note in payment. II. No payment can be made unless there be an acceptance by the payee, or some one in his behalf. III. It appears from the testimony that the whole arrangement with Platt was one transaction, subject to Van Kuren's approval. IV. Van Kuren refused to accept Platt's note, and Platt refused to pay the money, which rendered that transaction with McCarty of no effect, it not being consummated. V. The note of Platt not having been accepted by Van Kuren, could not have been enforced, being without consideration in the hands of any one but the plaintiff. VI. The note upon which this action is brought having been handed to Platt only upon conditions, which con-

ditions were not fulfilled, has not lost its vitality against the makers, and the money and note of Platt having been returned, there has been no legal or equitable change in the liability of the defendant. VII. The defendant had given his note with Peter E. Radcliff, to Platt, to have it discounted, and with the proceeds to take up this note which P. E. Radcliff destroyed after the arrangement with McCarty. VIII. The verdict was contrary to evidence.

*J. Armstrong,* for the defendants. I. McCarty, Wager's law partner, had the same authority to receive payment of the note in question that Wager himself had; and his acts must conclude their client, as much as the acts of Wager would have done. The attorney has a large and liberal discretion. The act here attempted to be repudiated worked no injury, and under some circumstances might have been highly beneficial to the plaintiff. It came therefore within the scope of his authority. II. The payment by Platt of $490 in cash, and McCarty's acceptance thereof, and of Platt's individual note for the balance, the original note being given up at the time, must have been understood by both to be a payment of the latter. The only condition of which McCarty speaks was, that if Van Kuren would not consent to give time on Platt's individual note, he, Platt, was to pay the money—not that the entire transaction should be rescinded. III. McCarty, either the same afternoon or the next, made known to Van Kuren what he had done. Van Kuren made no objection, and therefore must be presumed to have assented to the arrangement. Platt was amply responsible, and Van Kuren could have had no motive for dissenting so far as the plaintiff was concerned. What afterwards passed between him and Wager was not evidence; and if it was, it only proved that he wanted the money for Platt's individual note. And Wager, by demanding it, ratified the arrangement McCarty had made. IV. It was Platt who sought to revoke the arrangement made between him and McCarty. The proposition to return the original note and take back his own and the money he had paid, came from him. He had no right to

require this to be done, and was liable upon his individual note.
V. The arrangement with Platt could not be rescinded without
affecting the rights of other parties to the note ; and it was re-
scinded only at his request and for his convenience.    VI. The
decision of the judge has the same legal effect as the verdict of
a jury would have had, and every conclusion of fact which from
the evidence he might have drawn, is to be intended in support
of his decision.    VII. The payment by Platt of $490 in cash
was a payment of the note *pro tanto ;* and the only question is
whether Platt's individual note for the balance was accepted in
payment of the original note.    This was a question of fact
which is settled by the decision of the judge.    (*Johnson* v. *Weed,*
9 *John.* 310.)    VIII. The plaintiff's remedy was on Platt's in-
dividual note, and unless this proved to be of no value, there
was no pretence for resorting to the original note.

*By the Court,* BARCULO, J.    It can hardly be contended that
the attorney, under his general authority to collect the note, was
not authorized to receive a payment of part in money, and the
residue in a note for two or three days of a person of undoubted
responsibility.

The authority of the attorney being conceded, it becomes a
question whether the evidence establishes the fact of payment.
Platt, one of the makers of the note, went to the attorney on
the 13th of June, paid $490, and gave his individual note for
$600, which he requested him to take for two or three days.
The attorney received the money and note and gave up the
original note.    Van Kuren, the plaintiff's agent, who left the
note for collection, was informed on the same day of the ar-
rangement, and did not express any dissent.    It seems to me
that this evidence would fully *authorize,* if not *require,* a jury
to find that the original note was paid.    Suppose things had
remained thus for a year, or even a month, could there be any
doubt of the intention of the parties to make this a payment ?
And yet length of time could not really make any difference in
the character of the transaction.    If it was a payment at all, it
was so at the instant of its completion.

But it is contended that this arrangement was conditional, and subject to the approval of Van Kuren; and that, he disapproving, Platt on the 15th rescinded the arrangement and restored things to their former state. As I understand the evidence, the only thing subject to the approval of Van Kuren, was the taking of Platt's note for two or three days; for Platt promised, if Van Kuren was not satisfied with that, he would give the attorney the money for it. This seems to have been the understanding also of the attornies; for when one of them applied to Platt on the morning of the 15th, he told Platt that Van Kuren would not assent to the arrangement, "and that he must pay the money on his note." Up to this time no one seems to have supposed that Platt had a right to rescind the arrangement and take back his note and money. It was evidently an *after thought*, and probably originated in some difficulty between Platt and the other makers. If the arrangement was conditional, as claimed by the plaintiff, it is extraordinary that the attorney did not keep the original note until the approval of Van Kuren had been obtained.

But it is also contended that Platt's note could not operate as a payment, because it was the note of *one of the makers of the former note*, and falls within the cases of *Cole* v. *Sackett*, (1 *Hill*, 516,) and *Waydell* v. *Luer*, (5 *Id*. 448.) But in addition to the circumstance that the last of these decisions was reversed by the court of errors, (3 *Denio*, 410,) it never had any application to the case of a liability *created merely by note*. It was applied to the occasion of joint indebtedness arising out of partnership dealings. The supreme court held that the note of one partner, given for a partnership debt, antecedently due, would not extinguish the liability of the other partners. But the reason assigned for that decision is by no means satisfactory. It is said that there is *no consideration* for the discharge of the other debtors, on receiving the note of one. This at first view *appears* to be correct, so far as relates to the *benefit* received by the creditor; although the fallacy of that appearance has been shown by Senator Lott in his opinion delivered on the reversal of the decision in *Waydell* v. *Luer*. But there is another re-

spect in which this reason is still more unsound : and that is in respect to the *prejudice* sustained by the discharged debtors.

"A valuable consideration is one that is either a benefit to the party promising, or *some trouble or prejudice* to the party to whom the promise is made." (2 *Kent's Com.* 464.) Hence it follows, that if the debtors claiming to be discharged can show that on the giving of the individual note of one of the joint debtors, in satisfaction of the previous note, they furnished that debtor with funds to pay a portion of the debt, or settled with him upon the basis of his having assumed the whole debt, they are *troubled* and *prejudiced* by the arrangement, and can hold the creditor to his agreement. Now in the case of *Waydell* v. *Luer*, it was expressly proven that Waydell took the individual note of Cort and gave up the firm note, knowing of the dissolution of the partnership ; that the other partners credited Cort in his general account with the amount of the note, as so much assumed by him ; and Cort's notes were renewed from time to time for two years, before the suit was brought. These facts warrant the conclusion that the business of the partnership had been closed ; that Cort had been furnished the funds to pay this debt, and settled with by the other partners upon that basis. And yet after a lapse of two years, when Cort had probably become insolvent by the laches of the plaintiff, it was held that there was no consideration for the discharge of the defendants. It seems to me it would have been better to have said to the plaintiff, "You have voluntarily elected to give up the joint security and take the note of an individual. The defendants, acting upon that, have contributed their quotas toward the payment of this debt, by supplying the individual debtor with funds to pay the same. They are therefore in a worse position in consequence of this arrangement : they have been troubled and prejudiced, which constitutes a sufficient consideration for their discharge."

So in the case of *Cole* v. *Sackett,* the debtor claiming to be discharged, had settled with the other, allowing him for the amount of the debt assumed by him individually, and the creditor took his individual note, and gave up the firm note. At

HARVARD LAW SCHOOL LIBRARY

that time the partner who assumed the debt was in good credit, but before suit he became insolvent.    And in the case of *Arnold* v. *Camp*, (12 *John.* 409,) it appeared that Camp had given Downing, whose individual note was taken, property for the purpose of taking up the note.    It seems to me that in all these cases there was an abundant consideration shown, according to the principles adverted to.

The case before us is one of a similar character.    Platt made an arrangement with the other makers, or some of them, and in consequence thereof, he took up the original note and gave his own for a part; and the plaintiff accepted it in payment of the first note, which was given up to Platt.    Here a consideration appears in the arrangement made between Platt and Radcliff, by which it seems that the latter had furnished the former a note to be discounted.    In other words, provision had been made for the payment of this note; the means were put into Platt's hands; he offered to become, and was accepted by the plaintiff as, the sole debtor.    The consideration is clear and sufficient; and the discharge of the defendant, by giving up the old note, is valid and binding.

In all these cases the circumstances of the transaction show that the party discharged has, by reason of the arrangement, put himself into a position where he may or must be prejudiced if held liable for the debt: and this constitutes a legal consideration for the creditor's discharge of him.    Whether indeed, it would not be the duty of the court, in the absence of express proof, to *presume* from the nature of the transaction itself, the existence of a consideration of the character referred to, is a grave question which need not now be discussed.

The motion for a new trial must be denied.