## THE PEOPLE AND TAYLOR *a.* MAYOR, &c., OF N. Y.

*Supreme Court, First District ; Special Term, July,* 1860.

COLLUSIVE · JUDGMENT.—MOTION.—AUTHORITY OF ATTORNEY.—
COUNSEL TO THE CORPORATION.

On a motion made by the Corporation of the city of New York, or on one made
   under the act of 1859 by the comptroller, to set aside a judgment against the
   Corporation, on the ground of collusion, fraud, and irregularity, the court
   should not inquire into the merits of the action, nor be influenced by consid-
   ering whether opening the judgment would result in gain or in loss to the de-
   fendants. Such motions are founded on a mere matter of right, resting on the
   existence of the collusion, fraud, or irregularity.

Although stipulations made by the attorney, pertinent to the matters intrusted
   to him, are binding upon the client, though made without special authority ;
   yet acts done outside of the matter committed to his charge are not binding,—
   *e. g.,* a stipulation not to appeal,—and where the attorney is unable to respond
   in damages, the court will relieve the client, preserving the other party from
   loss. The right of appeal cannot be taken away without the suitor's consent.
   So of a stipulation not to move for a second trial, under the statute, in an action
   for lands.

The counsel to the Corporation of the city of New York has no larger powers, as
   such, to bind his clients, than those connected with the ordinary relations of
   attorney and client.

If a judgment is based upon the fact that a former judgment is conclusive upon
   the parties, it should be set aside on motion when the former judgment has
   been set aside.

Motion to set aside judgments.

These were motions made by the corporation counsel, and by
the comptroller of the city, proceeding under the Laws of 1859,
ch. 489, § 5, to set aside three judgments obtained against the
city. The first judgment was in a suit brought, in which the
People and Taylor & Brennan were plaintiffs, to recover from
the city and its lessees the possession of lands. The pro-
ceedings in this action are recounted in the opinion of the
court. The second judgment was in an action brought by
Taylor to recover damages for mesne profits, he having pro-
cured from the commissioners of the land office an extension of

the lease. The third judgment was in an action by Taylor & Brennan to recover damages for back rents on the first lease.

*Wm. Curtis Noyes* and *John McKeon,* on behalf of the comptroller; *Greene C. Bronson, H. H. Anderson,* and *Gilbert Dean,* on behalf of the corporation;—for the motion.

*John H. Platt* and *J. W. Edmonds,* for plaintiffs, Taylor & Brennan; *Wm. M. Evarts,* for The People;—opposed.

INGRAHAM, J.—The defendants, The Mayor, &c., of the city of New York, move to set aside the judgments entered in these cases, and all executions and proceedings thereon, and all proceedings in the action No. 1, after the order of Justice Roosevelt of 13th July, 1859, and all stipulations to refer, and subsequent proceedings in the other actions and for other relief.

These motions come before me in a twofold aspect.

The comptroller, under the act of 1859, moves to set aside the proceedings upon the allegations of supposed collusion in obtaining the judgments, or that they were founded in fraud.

The counsel for the Corporation joins in the application on behalf of the city, and asks to have the proceedings vacated and set aside, not only for the same causes stated by the comptroller, but for various other grounds, which will be referred to by me herein.

In the decision of these motions, therefore, it may be necessary for me to examine, not only the supposed grounds of collusion and fraud, but the questions which arise as to the powers and authority of the corporation counsel, and his proceedings in the progress of these cases prior to judgment.

The course of proceeding in the first action was certainly not that of ordinary prosecutions, involving a large amount of property which depended as to title upon an examination of ancient documents, and which was claimed by both the parties to the controversy representing the State and city; it was not, under ordinary circumstances, to be expected that the litigation would end without a full examination before the courts as to the matters in controversy, until finally settled by the Court of Appeals; and yet at the present time, as the case is now pre-

sented to the court, the defendants are concluded upon all the matters which have been raised in this cause, without the opportunity of review or of a new trial as allowed by law.

I propose to examine, first, the proceedings of the counsel as resting upon the authority which he possesses in representing the city, and whether such proceedings and stipulations are binding upon the Corporation. Before doing so, however, I will notice some matters which have been urged before me as grounds for granting this motion.

On behalf of the city, the corporation counsel has examined at length the proceedings of the commissioners of the land office in granting the lease of the premises originally to Taylor & Brennan, the lessees, and impugning their motives, both on account of the small amount of rent to be paid and the haste with which the grant was made.

In reference to that it is sufficient for me to say, that with such proceedings I have nothing to do on this motion; whether the commissioners did or did not honestly and faithfully discharge their duties is a matter between them and the State. If the price received by them for the lease was inadequate, the State, and not the courts, is to call them to account. If there was any fraud in making the grant, or if the lease was void as prohibited by law, or for any other cause, such matters may be grounds of defence in the action, but are not to be examined in these motions.

The State must protect its own rights against its own officers, and it matters nothing to the city of New York in resisting claims to this property, that a lease has been given to Taylor & Brennan by the commissioners for a sum far below its value. Such a defence would form no ground for their claim to the possession of the land, if they could show no title thereto better than the State had, and that title was to be examined and ascertained on the trial of the cause.

For this reason, also, I do not deem it within my duty, on this motion, to examine who had the real title to this property, or whether the State owned it or the city; such questions must, necessarily, be examined and decided in a more formal and deliberate manner than could be done on the motion, and they have been examined and decided when this cause was tried. That decision should only be reviewed on appeal, if there are

no reasons for opening the judgments in the other grounds upon which this motion is based.

I refer, in those remarks, to the suggestions which were made before me by most of the counsel, as to the title of the property in controversy, and the claims urged on both sides as to the right of each to hold the same.

It may become necessary hereafter to inquire as to the authority of the commissioners in other respects as to matters involved in this controversy; but of that I will not speak now.

These views, above expressed, also render it proper for me to add that, in the decision of these motions, I have nothing to do with the consequences of loss that might follow to the city, if the judgments should be opened, or the gain if the judgments are suffered to stand. I have no discretion to exercise, and no consideration of policy should influence me in regard to the final results of this litigation. If the judgments should be opened, and the result be a loss to the city of more land or greater damages, the officers who applied for the granting of this motion, have undoubtedly acted, and, I cannot doubt, are acting as they·deem best calculated to promote the city's interest.

These motions are founded on a mere matter of right—if the judgments have been collusively obtained, or if the proceedings by which those judgments have been entered up against the city have been irregular and without authority, the defendants can ask, as a matter of right, to have them vacated and set aside.

If there has been no such fraud, collusion, or irregularity in the proceedings, it is my duty to sustain them, whether I should think the title to be defective or not; or whether, in a different form, on a review of the proceedings upon the trial, the same could be sustained or not. The law has provided a mode of appeal on those questions, and in my judgment they should not be examined in any other. Originally, the Corporation of the city and the tenants of the ground sought to be recovered, were made parties defendant in this action.

On demurrer by the defendants to the complaint, the complaint was sustained, but the justice, in his opinion, intimated that the Corporation was improperly made a party, and that no cause of action existed against the city Corporation for with-

holding the premises was stated in the complaint. (People *a.* The Mayor, &c., of New York, 28 *Barb.*, 240 ; S. C., more fully, 8 *Abbotts' Pr.*, 7.)

Upon this decision, made in December, 1858, an order was entered requiring all the defendants to answer.

In February succeeding, on a consent signed by the corporation counsel and the attorney for the plaintiffs, Taylor & Brennan, the action against the city was discontinued, and an order duly entered. The costs of the defendants, the mayor, &c., were also paid.

On the 9th February, the counsel informed the mayor that such discontinuance had been entered.

After the entry of this order, the plaintiffs proceeded in the cause against the tenants, and took a judgment against them by default for the possession of the premises and for the recovery of a large amount of damages.

Upon the discontinuance as to the Corporation coming to the knowledge of the mayor, he communicated to the Common Council an application to him from the tenants, asking to have them protect the tenants in their possession, and thereupon a resolution was passed on the 15th of February directing the corporation counsel to appear and defend the tenants in that action, and to take such other measures as would effectually protect the interests of the city in the said property and the suit affecting the same.

After the passage of this resolution of the Common Council, the corporation counsel was not substituted as attorney for the tenants until the 25th of May, the day after the judgment had been taken against them by default.

In June a motion was noticed to have the judgments set aside, the receiver discharged, the possession restored, and the funds in the hands of the receiver paid over to the Corporation. On this motion the corporation counsel appeared, and in July Mr. Justice Roosevelt granted the motion setting aside all the proceedings, restoring the possession of the property to the city, and ordering the receiver to account and pay over all moneys received by him to the Corporation. This order was entered on 13th July, but instead of carrying it into effect a stipulation was entered into in September ensuing between the counsel of the Corporation and the attorney of the plaintiffs, that the

Corporation should be restored as defendants, that an answer should be put in forthwith, that the trial should be had at the then circuit, if possible, and consenting to have the cause noticed without issue.

The stipulation also restored the receivership, left the moneys in his hands, to abide the final determination of the case, and made all orders theretofore entered, to conform thereto. It also contained admissions seriously affecting the rights of the Corporation.

Within a day or two thereafter, the case was tried before Judge Potter, and a verdict rendered for the plaintiffs.

An appeal was taken by the attorneys for plaintiffs and for the defendants,* and on the 9th November the corporation counsel agreed to withdraw his appeal, on the plaintiffs' counsel stipulating to do the same, and both agreed not to appeal or apply for a new trial within the time allowed by law, which stipulation was carried into effect by the withdrawal of the appeal on behalf of the defendants on the 31st of December, 1859.

The questions which arise on this branch of the motion are in regard to the validity of these stipulations, and the authority of the attorney to make them.

Under ordinary circumstances, the authority of an attorney is limited to his employment. He is authorized by his client to do any thing necessary to the proper management of the action intrusted to him, whether its prosecution or defence.

He may agree to a reference, and it has been held in some cases that he may even consent to an arbitration. (Holbert *et al. a.* Parker, 7 *Cranch*, 436; Gorham *a.* Gale, 7 *Cow.*, 744; Smith *a.* Troup, 7 *C. B.*, 757; Faveall *a.* East Railway Co., 6 *Dowl. & L.*, 54). It was formerly held that an appearance by an attorney for a party without authority was good, leaving the party to his remedy against the attorney for his damages. (Denton *a.* Noyes, 6 *J. R.*, 296.) But that rule was long ago modified so as to give relief to the party, if the attorney was not fully able to respond in damages. And in Denton *a.* Noyes, Ch. J. Kent said, he was willing to go free then, and in every such case, to let the defendant in to a defence.

In Meachum *a.* Dudly (6 *Wend.*, 514), the rule was settled

---

* See 10 *Ante*, 111.

that the court would relieve a party if his attorney was not responsible ; and if he was able to compensate in damages, the rule still remained. (Adams *a.* Gilbert, 9 *Wend.*, 499 ; Campbell *a.* Bristol, 19 *Wend.*, 101.) Later than these cases, a still greater disposition has prevailed among the judges to relieve a party from the unauthorized acts of the attorney. In the English courts these views as to relieving parties now prevail.

In Bagly *a.* Buckland (5 *Dowl. & L.*, 115), the court say : " We are disposed to lay down a different rule, and to confine the liability of the defendant to cases in which the course of proceedings had given him notice of the action. If the plaintiff, without serving the defendant with process, accepts the appearance of an unauthorized attorney for the defendant, he is not wholly free from the imputation of negligence, for the law requires him to give notice to the defendant by serving the writ, and he has not done so."

But while the attorney has all the authority necessary for the conduct and management of the action, and for the collection of the debt, if any, his powers go no further. He has no further or greater authority, even if he thinks it, for the benefit of his client. Thus, he cannot bind his client to an appeal-bond, although he thinks it for his client's interest to appeal. (*Ex parte* Holbrook, 5 *Cow.*, 35.) He has no right to make a compromise for his client. (Holber *et al. a.* Parker, 7 *Cranch*, 436 ; Nozan *a.* Jackson, 16 *Ill. R.*, 472.) He cannot release the interest of a witness on the trial. (Murray *a.* House, 11 *J. R.*, 464.) He cannot discharge the debt for a less sum than the amount recovered. (Lane *a.* Gamage, 1 *Pick.*, 347 ; Crump *a.* Challis, 6 *Dowl. & L.*, 48.) He cannot compromise and discontinue a suit brought for land of his clients, in consideration of a conveyance of parts to him. (Filly *a.* Miller, 25 *Penn. S. R.*, 264.) He cannot purchase land sold under an execution issued in the cause for the benefit of and as trustee for his client. (Beardsley *a.* Root, 11 *J. R.*, 464.) He has no authority to discharge the defendant on an execution without receiving payment. (Simonton *a.* Banell, 21 *Wend.*, 362.)

In Terhune *v.* Colton (2 *Stockton R.*, 21), the chancellor of New Jersey says : " I think that the solicitor had not the power to enter into an agreement by which the lien of his client was postponed to a subsequent incumbrance. The authorities are

numerous and very uniform against the authority of an attorney to enter into any agreement of this kind, without being authorized." (See also Williams *a.* Smith, 1 *Dowl. Pr. Cas.*, 632 ; Hubbard *a.* Phillips, 13 *M. & W.*, 702.)

In Howe *a.* Lawrence (2 *Zabr. (N. J.) R.*, 29), it was held, that such an agreement, made by an attorney or counsel, of matters not necessarily connected with the conducting of the case, would not be sustained.

The stipulations in that case were somewhat of the same character as these in this case, excepting that the intent was to allow another trial instead of preventing any review by the higher court.

The chief justice, in describing the stipulation, says : " The stipulations were that all necessary papers should be filed out of time, that all irregularities in the steps taken should be waived, that the same judgment should be entered in the cases as were entered in that," and other provisions were made after judgment was entered ; and in expressing his opinion on the validity of the stipulation, he says : " The stipulation to waive the judgment was not an agreement for the conduct of the cause, it was a deliberate surrender of his client's rights, a surrender which I conceive the counsel had no power to make, and which, if he had the power, justice would never permit to be enforced. * * * Either the agreement must have been entered into by the counsel of the defendant under some misapprehension of its character, in which event it is not his agreement, or it must have been founded on some corrupt consideration, in which event it is utterly void. The high character of the counsel forbids the imputation of fraud or corruption. The alternative remains that the agreement was entered into under some mistake or misapprehension, and ought not to be enforced by the courts."

In Pike *a.* Emerson (5 *N. H. R.*, 303), a contrary opinion seems to have been entertained as to the right of the attorney to stipulate not to bring an appeal, and the court held that while such a stipulation existed, they would grant a motion to dismiss the appeal.

But on examination of that case, it appears that the effect of that decision was that the party must first move to set aside the stipulation if there was any reason why it should not be held

valid, before he could bring the appeal. The judge says : " The court has the power, without doubt, in case of fraud or mistake, to relieve a party from the effects of such an agreement, but while the agreement remains unimpeached, no appeal can be prosecuted."

The rule confirming relief to the client only to cases of the insolvency of the attorney, has nearly, if not entirely, become obsolete, and the rule adopted to give relief to the party where the act was unauthorized. In Sharpe *a.* The Mayor, &c., Justice Mullin says : " The recent, and, in my opinion, the more just practice is, for the court to relieve the client, without reference to the responsibility of the attorney, where a proper case for granting relief is established. There is no justice in permitting one party to obtain an undue advantage over another through the neglect or misconduct of that other's attorney. Courts of law are not to be used by parties in perfecting, through the forms of law, the ruin of a party who has employed a negligent or unworthy attorney."

And in 1 New York Ch. R. (554), it is said : " The law will not permit an attorney, through that relation, to make a contract relative to the property in litigation, to the disadvantage of his client."

From these, and other cases which might be cited, it can easily be seen what the duty and authority of the attorney is. He is vested with all necessary power and authority for the management of the case intrusted to him, and for carrying into effect the orders and judgments of the court. If he enters into stipulations pertinent to the matter intrusted to him, he can thereby bind his client. If, in such matters, he acts without special authority, the court will still enforce his acts against his client in the particular business of his employment. If, in so doing, his client is seriously damaged, and he is unable to respond in damages, the court will relieve the party injured, preserving the other party from loss.*

---

* The authority of the attorney in a cause has been defined as follows :

In general, the attorney on record is authorized by his retainer to do such things as pertain to the prosecution of a suit to final judgment and execution, and to receive the money for which such judgment is recovered, especially, if received within the time in which he might regularly issue execution ; and upon the receipt of the money, to discharge the party, and acknowledge satisfaction of

But his acts done outside of the matter committed to his charge are not binding; and when he undertakes to bind his client, by stipulating as to matters not connected with the action, such agreements are not binding. In the present case, it can

the judgment. [Citing 2 Rev. Stat., 363, § 25; 10 Johns., 220; 8 Ib., 362; 6 Ib., 53; 11 Ib., 464; 7 Cow., 739.] (Stewart *a.* Biddlecum, 2 *N. Y.* (2 *Comst.*), 103.)

Under the general authority of an attorney, he may discontinue the cause. His general power does not extend to a *retraxit* or release, but this is because they relate to the cause of action itself, not merely to the remedy. But he may do all ordinary acts in the prosecution of the suit, or in the final disposition of it. (*Supreme Ct.*, 1826, Gaillard *a.* Smart, 6 *Cow.*, 383.)

The general retainer of a solicitor in chancery as such, gives him no authority to employ counsel for his client at counsel fees beyond the allowances fixed by the fee-bill. (*Chancery*, 1835, Matter of Bleakley, 5 *Paige*, 311.)

An attorney cannot recover of his client fees of counsel associated with him, without proving that he employed such counsel at the client's request, or with his sanction paid such fees. (*N. Y. Com. Pl.*, 1855, Cook *a.* Ritter, 4 *E. D. Smith*, 253.)

Counsel cannot settle a suit and conclude the client in relation to the subject in litigation without special authority. (*Supreme Ct.*, *Sp. T.*, 1846, Shaw *a.* Kidder, 2 *How. Pr.*, 244.)

A client has no right to control his attorney in the due and orderly conduct of the suit. Where the case is of such a nature as that there can be no doubt in the mind of the attorney, that according to the settled rules of practice, the default will be opened by the court on the usual terms, it is his duty, when applied to for that purpose, to open the default, any directions of his client notwithstanding, and not compel the party to apply to the court. (*Supreme Ct.*, 1828, Anon., 1 *Wend.*, 108.)

Attorney's motion to open default denied, on the ground that defendant had sent to him written instructions not to make the motion. (Derickson *a.* McCardle, 2 *How. Pr.*, 188.)

A verbal authority to an attorney to appear in a cause, is not authority to release the interest of a witness. (*Supreme Ct.*, 1814, Murray *a.* House, 11 *Johns.*, 464.)

A counsel on the trial of a cause has not authority, as such, to execute a release of a witness, in the name and as the attorney of the party; the latter being absent. (*Supreme Ct.*, 1849, Bowne *a.* Hyde, 6 *Barb.*, 392.)

The attorney of the plaintiff in an execution has authority to direct the deputy sheriff in his proceedings, and may authorize a departure from the regular and ordinary course. (*Supreme Ct.*, 1842, Corning *a.* Southland, 3 *Hill*, 552. And see Gorham *a.* Gale, 7 *Cow.*, 739.) But, *it seems* that it is not a part of the duty of the attorney of an execution-creditor, as such attorney, to direct the sheriff in the discharge of his duty under the execution. (Ray *a.* Birdseye, 5 *Den.*, 619; affirming S. C., 4 *Hill*, 158.)

The attorney to the plaintiff in a suit has no authority, from his general character as attorney, to discharge the defendant from execution on a *ca. sa.*, until the money is paid. An attorney's authority determines with the judgment, or at least with the issuing of the execution within the year. (*Supreme Ct.*, 1811, Jackson *a.* Bartlett, 8 *Johns.*, 361; approved and followed, 1813, Kellogg *a.* Gilbert, 10 *Ib.*, 220; S. P., Simonton *a.* Barrell, 21 *Wend.*, 362.)

hardly be necessary to ask for evidence that the attorney cannot respond in damages to the city, if the result of these stipulations should deprive the city of its property.

The value of the property is estimated at millions, and no

---

The ordinary authority of an attorney, in prosecuting a demand, does not authorize him to bid, or to direct another person to bid, in the name of his client, at the sale on an execution. (*Supreme Ct.*, 1814, Beardsley *a.* Root, 11 *Johns.*, 464 ; 1825, Hawley *a.* Cramer, 4 *Cow.*, 717 ; 1847, Averill *a.* Williams, 4 *Den.*, 295.)

In analogy to his authority to pursue the appropriate processes by execution, to enforce the collection of the demand, as they existed prior to the non-imprisonment act of 1831, an attorney, under his retainer to collect a demand, is now authorized to demand from the debtor an assignment of his choses in action, and, on refusal, to institute proceedings under the non-imprisonment act of 1831.' [20 Pick., 53.] (*Ct. of Appeals*, 1848, Steward *a.* Biddlecum, 2 *N. Y.* (2 *Comst.*), 103.)

As between plaintiff and defendant, the attorney's authority, under a general retainer, does not allow him to satisfy the judgment, except upon actual payment in money of the full amount. (*Supreme Ct.*, 1858, Lewis *a.* Woodruff, 15 *How. Pr.*, 539 ; and see Benedict *a.* Smith, 10 *Paige*, 126.)

The authority of an attorney employed to defend a suit removed by certiorari from a justice's court to the Common Pleas, does not empower him to bring a suit on behalf of his client against the obligors in the bond given upon obtaining the certiorari. As a general rule, the authority of an attorney continues until final judgment is perfected, and no longer. (*Supreme Ct.*, 1848, Walradt *a.* Maynard, 3 *Barb.*, 584.)

That the plaintiff's attorney has no authority to receive payment of the judgment after two years have expired since it was rendered. (Chautauque Co. Bank *a.* Risley, 4 *Den.*, 480.)

An attorney ceases to be such on the death of the client. He is in no sense the attorney of the successors in interest. (*Supreme Ct.*, 1852, Putnam *a.* Van Buren, 7 *How. Pr.*, 31 ; and see Beach *a.* Gregory, 2 *Abbotts' Pr.*, 203 ; affirmed, 3 *Ib.*, 78 ; S. C., *sub. nom.* Beach *a.* Raymond, 1 *Hilt.*, 201 ; Balbi *a.* Duvet, 3 *Edw.*, 418.)

After the death of plaintiff in a judgment, and after the expiration of five years from the recovery of the judgment, a motion was made on behalf of plaintiff for leave to issue execution. The notice of motion and affidavits were entitled in the original cause, and the notice was signed " W., *att'y for pl'ff*." There was no suggestion of plaintiff's decease, but all the proceedings were in her name, and purported to be on her authority. The motion was granted, execution was issued, and property sold, by direction of plaintiff's executor.

*Held,* that the execution was no protection to the executor. W. had no authority to act as attorney of the plaintiff. A deceased person can have no attorney. The notice of motion signed by him had no effect, and must be regarded as if unsigned by any one. It imposed on the defendant no obligation to appear and answer the motion. The order, therefore, was void, and the execution also, for the reason that the plaintiff in the judgment was dead. (*Supreme Ct.*, 1856, Bellinger *a.* Ford, 21 *Barb.*, 311.)

The authority of the attorney is not terminated, in the case of judgment passing against his client, until the actual entry of judgment upon the roll. (*Supreme Ct.*, 1841, Lusk *a.* Hastings, 1 *Hill*, 656.)

client should be required to seek for redress to such an extent solely against his attorney, but should be relieved by the court from the danger of loss, so far as to protect his rights in the action.

In this case the attorney is the corporation counsel, elected by the people, and intrusted, by statute, with the management of the legal business of the city; and the inquiry is pertinent to this case, whether he has any larger powers and authority as such to bind his clients, than those connected with the ordinary relations of attorney and counsel.

By the Amended Charter of the City Laws of 1857, ch. 446, sub. 26, the Law Department is organized, having charge of and conducting all the law business of the Corporation, and of the departments thereof, and all other law business in which the city is interested, where so ordered by the Corporation.

And by the Corporation ordinance, organizing this department (124, sub. 9), it is provided that he shall prosecute and defend all actions which may be brought by and against them, &c.

In neither the charter nor ordinances is any power given other than the charge and conducting of actions.

They give him no right to assume the control of the property or interests of the city beyond that which belongs to any attorney or counsel in the ordinary management of suits.

The permanency of the office makes no addition to the powers as attorney or counsel.

I am at a loss to see any authority by which, without process, and without direction from the Corporation, he can make

---

Under a general authority to collect a note, an attorney has authority to receive a payment of part in money, and the residue in a note at two or three days, of a person of undoubted responsibility. (*Supreme Ct.*, 1849, Livingston a. Radcliff, 6 *Barb.*, 201.)

Where a solicitor is employed to procure an assignment of a bond and mortgage, or to invest money on such security, or to receive interest accruing on it, this does not involve a power to receive the principal. The debtor is authorized to infer a power to receive the principal, when the solicitor has possession of the securities, but not when they are retained by the client. But to protect himself on this ground, in making payment to the solicitor, he must show that the solicitor had the securities at the very time when the particular payment was made. (*A. V. Chan. Ct.*, 1845, Williams a. Walker, 2 *Sandf. Ch.*, 325; S. C., 3 *N. Y. Leg. Obs.* 204.)

them parties to suits, either as plaintiffs or defendants, or by which he can deprive them of rights vested in them by statute.

The right of appeal is given by law to suitors, and that right cannot, in my judgment, be taken away without their consent. It is not for him to judge as to their interest in submitting to a decision against them. The Common Council, as the legislature for the city, has alone the right to decide whether they will submit to a decision against them which takes from them a large amount of property; and when the counsel undertook to decide for them, he exceeded his powers, and made a stipulation into which he had no right to enter.

The same remarks apply to the stipulation not to move for a second trial, as provided by the statute in actions to recover possession of land. In this respect, also, he exceeded his powers, and this stipulation was without authority.

Throughout the whole argument of this motion, the acts of the counsel, of the mayor, and of the comptroller, have been referred to by one or other of the counsel, as if their acts bound the city, and made the Corporation liable for such acts and for their admissions in matters not specially intrusted to them by law. I know of no such authority vested in either of these officers. In the discharge of the duties belonging to their departments, they have authority to act; but neither of them has the power to bring actions without authority, to dispose of the property or rights of the Corporation without authority, or to make admissions to bind such Corporation, any more than other persons in the employ of the city government.

It would be almost impossible to form a correct idea of the consequences, if it were ever established that any head of a department had the power, without the authority of the Common Council, to dispose of city rights and property either directly or indirectly; and if the head of the law department can, at his pleasure, make the Corporation a party to suits, and, when a large recovery is had against the city, can stipulate that the city shall not have any means of review or redress, he would possess an absolute control over the city property far beyond that possessed even by the Common Council.

It appears to me that he possesses no such power, and the stipulations were unauthorized and cannot be sustained.

Nor can it be said that the plaintiffs have been misled by any such stipulations. They acted with full knowledge of the facts. It was by their act the Corporation ceased to be defendants; and when the stipulations were entered into, they knew, or were bound to know, that they were not necessary in the conducting of the action, and were not within the authority conferred by law on the counsel.

Whatever might be the rule, if the opposite counsel supposed the defendants' counsel had authority to make such stipulations, no case can be found where, acting with knowledge that such authority did not exist, or had not been conferred by the party, any court has ever upheld such stipulations.

Other considerations might be stated why these proceedings, by way of stipulation, should not be upheld, so as to deprive the defendants of any rights, by way of appeal or new trial, to which they would otherwise be entitled.

From the affidavit of Warburton, it is evident that Mr. Justice Potter, throughout, acted on the supposition that all the questions of law in the case were to be reviewed by the court.

When the motion to dismiss the complaint was made, he denied it, and said: " It is hardly to be expected that a justice at circuit should properly dispose of questions involving such importance. I think the court can best discharge its duty by so trying the case as to leave every question in such a condition as to have it reviewed before another court."

And when the defendants' counsel was submitting to the jury their view as to the title to the property, Justice Potter stopped him, saying: " You may be entirely right, but I have not deemed it so important, except for the purpose of getting the facts before the jury, which way this court shall rule the questions of law."

And, in regard to the summing up, when the counsel were limited to an hour each, Mr. Justice Potter said: " The facts are very limited to go to the jury. The main question will be for the present disposed of by the court, with the expectation that this is only a preliminary step to a final decision of the case."

The judge, in his charge to the jury, repeated these suggestions, and told the jury that the " trial was an incipient step, for the purpose of having this action brought to the highest

court, so that all the questions to be disposed of may be decided by the court of review."

From these statements, made by the learned justice before whom the cause was tried, it is apparent throughout that he kept constantly in view the re-examination of the case in a higher court, and that his rulings were rather in such a manner as would permit that court to decide the case finally, than with a view to its being terminated before him.

Of that right the defendants have been deprived by the stipulations, and they are thus concluded in a case where the court never ruled as to what was considered the strict rules of law, but in such a way as to get all the facts in evidence, leaving to the court above to correct any errors of law which might have been occasioned thereby.

Under such circumstances, I think no court would be warranted in holding the stipulations binding.

Much stress was placed upon the supposed compliance with the opinions expressed by the judges at different times, in this case, as warranting these stipulations.

The decision of Mr. Justice Sutherland did undoubtedly say that the city and the tenants ought not to have been made jointly defendants. (17 *How. Pr.*, 56; S. C., more fully reported, 8 *Abbotts' Pr.*, 7.) In compliance with that decision, the plaintiff applied to dismiss the action, as to the city, and paid their costs. Of this order entered by the plaintiffs no complaint is made. But that same opinion as clearly stated that no damages could be recovered in that action against the city, and yet the stipulation afterwards made admitted such liability. So, in the opinion delivered by Mr. Justice Roosevelt, he stated that the city had been improperly stricken out as defendants, for want of the consent of the attorney-general. But Justice Roosevelt probably overlooked the authority of the attorney-general to Mr. Van Buren to appear for the State, and the statement of the attorney-general, which was among the papers, that although the action was not commenced by his authority, Mr. Van Buren had acted, and that he had discontinued the action against the city. So far as the attorney-general was connected with the proceeding, this letter presented sufficient evidence of all the assent on the part of the attorney-general which he could give, and his assent to the

ratification of the act might be implied from the statements so made by him. It was probably these facts that led to the omission in the order, as finally settled by the judge, of every thing requiring the Corporation to be made a party. No such order having been made by him, the city was not properly a party. Nor could it, with propriety, have been made a party in any other way than setting aside the proceedings by which the Corporation was discharged, as defendants, and ordering them to demur. No such order was made by the judge, and I am forced to the conclusion that the act of the counsel, in stipulating to put them in as defendants, was unauthorized, and cannot be sustained.

Nor can I think that the opinion of Mr. Justice Roosevelt, that the city should have remained defendants, was the controlling motive for their restoration as defendants, when the same stipulation abandoned every thing which he had ordered to be done, and left the property and funds under the control and possession of the receiver, in direct violation of the order he had made in relation thereto.

My conclusions, therefore, are, that both stipulations are void, and must be set aside ; that the Corporation were improperly made defendants after the order dismissing them had been entered, and that all subsequent proceedings against them are irregular, and must be set aside.

From the conclusions that I have arrived at upon this branch of the case, it is not necessary that I should examine very minutely the grounds on which the comptroller's motion alone would rest, viz., collusion or fraud in the claim on which the judgment is founded. I think it proper to say there is no direct evidence of either. If there is any such collusion, it can only be inferred from the proceedings after the decision of Judge Roosevelt. That those proceedings were strange and unusual when so large interests were involved, that the stipulations ought not to have been made, that it was unwise to consent to put in an answer for the city and go to trial within two days, and immediately after the counsel who had been employed in the cause for a long time previously were discharged and new counsel employed, without notice, and without preparation, is very apparent. It would equally need explanation to show why a consent was given to make the Corporation liable, in

opposition to the decision of Justice Sutherland; why the money in the hands of the receiver was kept there, in express violation of the order of Justice Roosevelt; why these proceedings should be insisted upon, in opposition to the refusal of the mayor to have the answer which had been sworn to by him used in the action; why the appeals should be withdrawn without consulting the Common Council; and why, in like manner, the right of appeal was abandoned, and the right to a new trial, under the statute, stipulated away.

These all show a state of things operating very harshly upon the interests of the city, with little, if any, corresponding advantage.

It is contended that the motives for this course of proceeding may have been to save to the city the strip of forty feet which the jury had stricken out of the plaintiff's claim, and it may have been supposed by the counsel that he had a right to judge of such matters by virtue of his office. If these were the motives that led to the making of the stipulations, they would free the case from the charge of collusion and fraud.

Believing, however, as I do, that the course adopted by him was illegal and unauthorized as to the Corporation, and cannot be sustained, it is not necessary that I should say any thing further on this branch of the case.

The judgment in the second case cannot be sustained if the first is set aside. That was an action of ejectment which should not, in my judgment, have been referred. Whether so or not, the referees found that the judgment, in the action tried before Justice Potter, was conclusive upon them on the question of title.

As the order setting aside that judgment destroys entirely that evidence, I see no propriety in retaining the second judgment. It is based upon proceedings which are set aside, and the court, on every principle of justice, should set aside this judgment, if the first one cannot be sustained.

As to the third judgment, the same difficulty exists. The recovery is based entirely on the judgment in the first action as conclusive upon the question of title. Unless the same recovery should again take place, in that or some other action, the whole right to mesne profits fails; and although the questions as to the right of the plaintiffs under the assignment from the commis-

sioners, and the rule of damages in the action might be reviewed under the appeal taken in this case, still the whole claim is dependent upon first recovering the property and establishing the title thereto. If that has failed, there can be no recovery for the mesne profits until the right of the plaintiffs to the land is settled.

Upon the questions as to title and damages, I do not deem it necessary to express any opinion at the present time.

An order must be entered—

1. Declaring both stipulations, in the first action of the date of September 19, 1859, and of 9th of November, 1859, void, and directing them to be set aside.

2. Setting aside all proceedings subsequent to the 15th February, 1859, discontinuing the action as to the Corporation, so far as relates to them.

3. Directing the order of Mr. Justice Roosevelt, of 13th July, to be carried into effect, excepting as to the receiver.

4. Directing the plaintiffs to refund and pay over to the Mayor, Aldermen, and Commonalty of the city of New York, the moneys received by them from the receiver, under the order of 17th November, 1859, in the same mânner as the receiver was directed to pay the same.

5. The writ of possession must also be set aside, and the possession of the land restored to the city as directed by Judge Roosevelt.

6. If the appeal taken by the plaintiffs from the order of Judge Roosevelt is not still in force, the defendant must stipulate to allow such appeal to stand, so that order can be reversed.

7. The order will also direct an accounting by the plaintiffs of the moneys received from the land since they have had the possession, before John T. Hoffman, Esq., a referee appointed therefor, and that the amount found to have been so received, after deducting the expenses of collection, be deposited in the Trust Company, to abide the event of the first action; unless the plaintiffs, within thirty days after the confirmation of the report, give a bond, with sufficient sureties, to be approved by a justice of this court, on notice to the corporation counsel, to refund either the whole of such moneys, if they shall fail to recover judgment, in the first action, or a proportional amount if they shall recover less than the recovery before Mr. Justice

Potter, in September last. The costs in the first action, on both sides, must abide the event.

The judgments in the 2d and 3d actions are set aside, with all the proceedings therein subsequent to the order of reference, upon payment by the defendants of all costs therein after that order, and with leave to the defendants to apply to vacate the order of reference in those cases, or for such other order in regard to the references as they may deem advisable.

The plaintiffs may amend their complaints in either or all of the actions, and serve new complaints in such manner as they may be advised.

---

## BOWLES *a.* VAN HORNE.

*New York Superior Court ; Chambers, July, 1860.*

DISMISSAL OF COMPLAINT.—NEGLECT TO PROSECUTE.—COSTS.

The fact that defendant has actually noticed the cause for trial, does not preclude him from moving to dismiss the complaint for unreasonable neglect on the part of plaintiff to proceed.

What is such unreasonable neglect.

When, in granting an order dismissing the complaint for plaintiff's neglect to proceed, leave is reserved to him to bring the cause to trial on payment of costs, the costs should include all the costs to which defendant is entitled up to that time.

Motion to dismiss complaint.

HOFFMAN, J.—This is a motion to dismiss a complaint for unreasonable neglect to proceed with the cause.

In Ray *a.* Thompson (1 *Duer*, 636, *Nov.*, 1852), Mr. Justice Bosworth, with the concurrence of all the justices, stated the rule to be, that to entitle a defendant to move a dismissal of the complaint, he was not bound himself to notice the cause for trial, but might make the motion in all cases where the plaintiff had neglected to bring the cause to trial according to the course and practice of the court.

At the time of that decision, the 21st rule of the Supreme Court was in force, and was identical with the present 27th